**PUBLIC SERVICE MUTUAL INSUR-
ANCE COMPANY, Appellant,**

v.

**Lee COHEN, Appellee.**

**No. 79–1764.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 7, 1980.

Decided Feb. 28, 1980.

Curtis P. Cheyney, III (argued), Judith B. Reap, Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellant.

Charles Jay Bogdanoff (argued), Charles P. Menszak, Jr., Gekowski & Bogdanoff, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity case, plaintiff insurance company seeks reimbursement from its agent, alleging that he failed to notify an insured that certain of its employees would be excluded from coverage under a policy, and as a result the company had to pay a claim. The district court invoked collateral estoppel against the plaintiff because a Maryland court had determined that the carrier's contemporaneous audits of its insured's records and ensuing collection of additional premiums barred a disclaimer of coverage. Because the Maryland judgment does not preclude the possibility of liability on the part of the agent, we vacate the summary judgment in his favor and remand the matter for further proceedings.

This case has its genesis in a workmen's compensation claim filed in Maryland. The record establishes that Roger Eastwood, a truck driver employed by Packaged Poultry Sales Corporation (Sales), was killed in an accident while in the course of his employment in August 1975. His widow and children submitted claims to the plaintiff, Public Service Mutual Insurance Company, which denied liability. The insurer contended that it did not cover the Sales employees but did insure employees of Packaged Poultry, Inc. (Poultry), a related organization, except for its truck drivers who had been deleted from the policy in December 1974.

The Workmen's Compensation Commission of Maryland, the state in which the Eastwood family resided, made an award to the widow and children. The insurance company then appealed to the Circuit Court for Caroline County, Maryland. In affirming the Commission, the court found that both Sales, a Pennsylvania corporation, and Poultry, a New Jersey corporation, were entirely owned by the same individual, operated out of the same office, and "[t]o all intents and purposes . . . were the same, as far as the Workmen's Compensation insurance coverage for Eastwood was concerned."

The court went on to observe that Poultry had only two employees on its books, the president of the corporation, who also controlled Sales, and a bookkeeper. All of the truck drivers were employed by Sales. Nonetheless, the court had little difficulty in concluding that the insurance policy issued to Poultry was intended to cover the truck drivers working for Sales, since the relationship between the companies had been explained to the insurance agent when he first wrote the policy for the 1973–74 period.

The Maryland court also found that the carrier had audited the insured after the first year of the policy had been completed on October 16, 1974 and sent a bill for an additional premium of $620 on January 2, 1975.[1] In the meantime, the policy had been renewed for another year as of October 17, 1974, despite the fact that the Pennsylvania Insurance Department had directed the carrier to delete coverage on Poultry's policy for drivers because that corporation employed none. On December 18, 1974, the Philadelphia branch of the insurance company notified the home office that coverage for truckmen had been withdrawn. There was no evidence, however, that Poultry was told about the deletion at that time, and "[t]he insurer offered no satisfactory proof that Levin, the broker, was ever notified of the cancellation until after Eastwood's death."

The court concluded that the insurance company was estopped from denying coverage because of the audits it had made and the additional premiums it had collected. Under the circumstances, the carrier was said to have a duty to discover that the drivers in fact had been listed on the Sales company payroll.

The insurer did not appeal the circuit court's decision but instead sought a declaratory judgment against its Philadelphia agent, defendant Lee Cohen. The company asserted he had received notice of the cancellation of drivers' coverage on December 18, 1974 but had neglected to inform the insured. Based on this allegation, the carrier asked for a declaration that Cohen was liable for the amount of compensation awarded to the Eastwood family and the litigation expenses incurred. The district court determined that the Maryland judgment established that the insurance company's losses were caused by its own conduct, not that of the agent. The court commented, "Assuming, arguendo, that Lee Cohen's knowledge or lack of knowledge, was not previously litigated, it cannot be denied that the proximate cause of plaintiff's loss has been judicially established." Accordingly, it entered summary judgment for the defendant.

---

1. The record does not indicate which company had been audited, but it is not denied that the records of both companies were maintained by the same individual at the office in Philadelphia.

Lee Cohen was vice president of the I. W. Levin Insurance Agency of Philadelphia. Public Service had no agency agreement with Levin but did have a contract with Lee Cohen, "an individual." The Maryland findings do not mention Cohen by name or describe his participation in any way but do refer to Levin, apparently inaccurately, as the broker. Thus, the Maryland court did not pass upon Cohen's conduct or responsibility in the matter before it. The district court did not dwell upon that aspect of the case, however, but instead relied on the proposition that the insured's own conduct precluded it from recovering against its agent, whoever that might be.

 The parties do not dispute that the district court in this diversity action was correct in applying Pennsylvania law, which requires the presence of four elements in order to invoke collateral estoppel:

"1) the issue decided in the prior adjudication was identical with the one presented in the later action,

2) there was a final judgment on the merits,

3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and

4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action."

*Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975). Pennsylvania no longer adheres to the doctrine of mutuality, *see In re Estate of Ellis*, 460 Pa. 281, 286–87, 333 A.2d 728, 730–31 (1975), and so the fact that Cohen was not a party in the Maryland suit does not, for that reason, prevent the use of collateral estoppel.[2] Accordingly, the district court looked to what had been determined adversely to the insurance company

in the Maryland litigation. That approach was correct, but the conclusions drawn were not.

The question in the Maryland court was whether Public Service owed coverage to Sales' employees. In answering that query, the circuit court refused to allow a disclaimer by the insurance company after it had collected premiums to insure the truck drivers, including Eastwood. The court also found that the carrier had never notified Poultry's owner that coverage for the drivers had been eliminated. Those facts were enough to resolve the coverage dispute and it was not necessary to decide whether the insurance company had notified Cohen or Levin, because notice to the agent would not have constituted notice to the insured. *See Slater v. General Casualty Co.*, 344 Pa. 410, 414, 25 A.2d 697, 698–99 (1942); *Scott v. Sun Fire Office*, 133 Pa. 322, 328, 19 A. 360, 361 (1890) (per curiam). *See generally*, 6A J. Appleman & J. Appleman, Insurance Law and Practice § 4187 (1972); 3 Couch on Insurance 2d § 25:28 (1960). Although the court commented that the insurance company had not offered satisfactory proof that Levin was timely advised of the cancellation, it is clear that notice would not have altered the result in the case.

On appeal to the circuit court, the insurance company had the burden of proving that the decision of the Workmen's Compensation Commission was erroneous. Showing that Cohen had notice would not have been sufficient, and the offhand comment by the Maryland court on that point must be regarded as nothing more than that.

 The district court took the position that the proximate cause of plaintiff's loss was the audit and assessment of additional premiums, actions that it believed were ad-

2. Applying Pennsylvania collateral estoppel principles does not run afoul of the full faith and credit clause and 28 U.S.C. § 1738, since the circuit court judgment would not be given any greater effect in Maryland than that permitted under Pennsylvania law. *See, e.g., MPC, Inc. v. Kenny*, 279 Md. 29, 367 A.2d 486 (1977); *Pat Perusse Realty Co. v. Lingo*, 249

Md. 33, 238 A.2d 100 (1968). As one commentator notes: "[R]ecent decisions assume that a second state is free to apply its own concepts of res judicata and collateral estoppel, so long as they do not deny to the first judgment all the finality it would have where rendered." R. Leflar, American Conflicts Law § 76, at 153 (3d ed. 1977).

equate to create a collateral estoppel bar independent of the agent's alleged dereliction in failing to notify the insured. But this approach overlooks the principle that there may be more than one proximate cause of a loss. Given the premise that under Pennsylvania law an insurance agent may be liable to the company for failure to notify an insured of the cancellation of a policy, *Kraber v. Union Insurance Co.*, 129 Pa. 8, 12, 18 A. 491, 492 (1889); *Aresto v. Milie*, 184 Pa.Super. 114, 118 n.2, 133 A.2d 304, 306 n.2 (1957), Cohen's alleged negligence may be highly relevant.

In the district court, the company asserted that it had forwarded the notice of cancellation to Cohen on December 18, 1974 together with a credit of $605 representing the estimated premiums for the additional coverage.[3] If he had contacted the insured promptly, it is conceivable that the coverage question might have been resolved before Eastwood's accident, which occurred some eight months later. Moreover, the dates when the audits were performed and the additional premiums assessed are not clear on the record as it presently stands. Prompt warning to the insured might possibly have changed those circumstances as well. The Maryland court was not concerned with these questions—it concentrated on whether there was coverage, not who might have been responsible for the breakdown in the internal operations of the insurance company. The district court, therefore, erred in using collateral estoppel to foreclose the insurer's attempt to show how defendant's conduct served as a proximate cause of plaintiff's loss.

 The fact that an issue arises in a slightly different context does not necessarily mean that collateral estoppel is inapplicable. Nevertheless, the materiality of the issue in the prior case, or the degree of importance attached to it there, may have a bearing on whether the question was in fact identical and whether the estopped party

had an adequate opportunity to contest the matter. In the circumstances present here, we conclude that the Maryland proceeding did not give the plaintiff the requisite full and fair opportunity to litigate the issues presented in this case. Accordingly, the judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion. Costs to abide the event.

**3.** There is some discrepancy in the plaintiff's pleadings as to when the cancellation notice was forwarded to Cohen. The complaint uses the December 18, 1974 date, while plaintiff's answer to defendant's motion for summary judgment says that the notice was received in February 1975. Like the district judge, we view this discrepancy as essentially irrelevant at this stage.