**RANGER INSURANCE COMPANY, Appellant,**

v.

**GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, LTD., Appellee.**

No. 85–1758.

United States Court of Appeals, Third Circuit.

Argued June 5, 1986.

Decided Sept. 5, 1986.

Rehearing Denied Sept. 30, 1986.

Austin Hogan (argued), R. Eric Hall, White and Williams, Philadelphia, Pa., for appellant.

Joseph P. Connor, III (argued), Connor & Weber, P.C., Philadelphia, Pa., for appellee.

Before GIBBONS, BECKER and STAPLETON, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge:

In this appeal we review a district court's disposition of a motion for summary judgment in a declaratory judgment action involving two insurance companies. The plaintiff Ranger Insurance Company (Ranger) sought to have the district court declare that the defendant General Accident Fire and Life Assurance Corp., Ltd. (General) was the principal insurer of one Leslie Gaylor to whom Ranger was potentially liable under a policy it had issued. General moved for summary judgment, contending that the issue of its relationship to Gaylor had already been litigated and that Ranger was bound by the outcome of that litigation. The district court agreed with General and entered summary judgment in its favor. Ranger appeals.

I.

On January 26, 1983 Leslie Gaylor was seriously injured in an accident while he was riding in a van driven by an employee of Delaware County, Pennsylvania. At the time of the accident the county had a comprehensive automobile insurance policy issued by Ranger. In July 1983 Gaylor filed

a complaint in the Court of Common Pleas for Delaware County against, amongst others, Delaware County, alleging that the county's negligence had caused his injuries and seeking monetary damages.

In late 1984 Gaylor and the county agreed upon a settlement, which they presented to the court for approval. At a hearing scheduled to review the proposed settlement, the court considered a petition submitted by Deborah Rossi, who apparently had cohabitated with Gaylor for some time before the accident in which he was injured. Rossi, to whom General had issued a comprehensive injury policy, requested that the court declare her the common-law wife of Gaylor, presumably so as to qualify her for a share of the proposed settlement. The court admitted evidence on the petition and heard testimony. In a single order the Pennsylvania court approved the settlement and denied Rossi's petition. No appeal was taken from this order. Since then, according to its brief, Ranger has paid more than $200,000 to Gaylor, and is liable, under the settlement, for further no-fault payments.

## II.

On June 20, 1985 Ranger filed in the Eastern District of Pennsylvania a complaint in which it sought a declaratory judgment that, under the policy General had issued to Rossi, General was the primary insurance carrier with respect to the personal injury protection of Gaylor. Central to Ranger's claim was its contention that "Leslie Gaylor and Debra Rossi had a common law marriage." *See* Complaint at 3, *reprinted in* Joint Appendix at 433.

General filed a motion for summary judgment. In support of that motion General argued that the Pennsylvania court's dismissal of Rossi's petition collaterally estopped Ranger from basing any legal claim on an allegation that she and Gaylor had a common law marriage.

The district court granted General's motion for summary judgment. In its accompanying opinion the district court, recognizing that Ranger could recover only if it

could establish that Rossi was the common-law wife of Gaylor, held that Ranger was collaterally estopped from litigating that issue. The court thus concluded that summary judgment was appropriate.

## III.

Both parties agree that Ranger can prevail in its action against General only if it can demonstrate that Rossi—General's insured—was Gaylor's common-law wife. The district court predicated its grant of summary judgment in favor of General on the ground that the prior state court adjudication of Rossi's marital status estopped Ranger from attempting to demonstrate this relationship in the subsequent district court proceeding. As no factual disputes exist on the record, we need only assess the propriety of the district court's legal conclusions as to the collateral estoppel consequences of the prior state adjudication. On this legal issue our review is plenary.

In assessing the collateral estoppel effect in this diversity case of the prior Pennsylvania, marital-status proceeding on Ranger's suit against General, we look to Pennsylvania law. 28 U.S.C. § 1738 (1982); *Public Service Mutual Insurance Co. v. Cohen,* 616 F.2d 704, 707 (3d Cir.1980) (approving, in diversity action brought in Eastern District of Pennsylvania, district court's application of Pennsylvania law to determine collateral estoppel consequences of prior Maryland state proceeding). Pennsylvania law requires that for a prior adjudication to estop a party from litigating an issue four conditions must be met:

1) the issue decided in the prior adjudication [must be] identical with the one presented in the later action,

2) there [must have been] a final judgment on the merits,

3) the party against whom the plea is asserted [must have been] a party or in privity with a party to the prior adjudication, and

4) the party against whom it is asserted [must have had] a full and fair opportuni-

ty to litigate the issue in question in a prior action.

*Cohen*, 616 F.2d at 707 (quoting *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 644, 668 (1975)). Ranger contends that the district court erred in finding that General had satisfied the third criterion, asserting that it was not in privity with any party to the Delaware County, marital-status proceeding.[1]

It is undisputed that Delaware County—Ranger's insured—was a party to the earlier state court proceeding. And it is agreed that in that earlier proceeding the court found that Rossi was not Gaylor's common-law wife. The issue we must resolve therefore is whether that finding collaterally estops Ranger, by virtue of its insurance relationship to Delaware County, from now adjudicating the marital-status issue. Or, to be more specific, we must determine whether, for purposes of assessing the collateral estoppel consequences of the earlier proceeding, Ranger was "in privity" with Delaware County.[2]

The Pennsylvania Supreme Court has held that, for collateral estoppel purposes, an insurer is in privity with its insured. *See Dally v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 374 Pa. 476, 478–79, 97 A.2d 795, 796 (1953). However, the Pennsylvania Superior Court has recognized an exception to this rule. In *Vaksman v. Zurich General Accident & Liability Insurance Co.*, 172 Pa.Super. 588, 94 A.2d 186 (1953), the insured had a policy that covered injuries "caused by accident." The insured was sued by a third party who alleged that the insured had negligently injured the third party. The insurer refused to defend the action, contending that it was not liable under the policy because, the insurer alleged, the insured had intentionally—not accidentally—injured the third party. The third party then obtained a judgment against the insured, who turned around and sued the insurer to recover under the policy. When the insurer pleaded as a defense that the insured had intentionally injured the third party, the insured asserted that the insurer was collaterally estopped from so pleading by virtue of the prior adjudication in which the insured was found to have injured the third party negligently.

The trial court accepted the insured's collateral estoppel contention, but the Superior Court reversed. Recognizing that insurers and insureds generally are in privity for purposes of collateral estoppel, the court nonetheless held that in the case before it such a finding would be inappropriate because in the prior adjudication the interests of the insurer and the insured conflicted on the point in issue. Noting that in the prior adjudication it was in the insurer's interest that the insured's action be characterized as intentional while it was in the insured's interest that it be characterized as accidental, the court reasoned that it would be unfair to bind the insurer to the prior judgment when the insurer, by virtue of its duty to its insured, could not assert the position that was in its best interest. Therefore the court held that the insurer was not in privity with its insured and thus was not collaterally estopped. *Id.* 172 Pa.Super. at 590–93, 94 A.2d at 188–89.

We discern from *Dally* and *Vaksman* that under Pennsylvania law insurers and insureds are in privity for assessing the collateral estoppel consequences of the prior adjudication of a particular issue unless in that prior adjudication the interests of

1. Of course General could have satisfied this third criterion had it been able to demonstrate that Ranger was a "party" to the prior proceeding. However, there is no question that Ranger was not a party to that proceeding.

2. This formulation assumes that Delaware County was a party to the marital-status dispute, something that is not at all clear. In substance that litigation, even though it took place within the context of the Gaylor-Delaware County dispute, concerned Rossi and Gaylor only. If this were so, the judgment bearing on the Rossi petition could not collaterally estop Ranger, for it had no relationship to either Gaylor or Rossi that would bind it to that judgment. However, in light of our disposition of the issue of Ranger's privity with Delaware County, we will assume that the county was a party to the marital-status determination.

the insured and the insurer conflicted on that issue.[3] In this case appellant Ranger—the insurer of Delaware County—contends that it cannot be collaterally estopped from adjudicating the marital-status issue decided in the prior state proceeding to which Delaware County was a party because in that proceeding Ranger's interest vis-a-vis the marital-status issue conflicted with the county's interest. We agree.

The prior state proceeding grew out of Gaylor's suit against Delaware County in which he sought compensation for injuries sustained when he was injured in an accident involving a county vehicle. The purpose of the proceeding was to seek court approval of a settlement proposed by the county and Gaylor, and it was in that proceeding that Rossi presented her marital petition. Because it was in the county's interest that the court approve the proposed settlement[4] and because the record makes clear that the court's granting of Rossi's petition would have jeopardized that settlement,[5] it was in the county's interest that the court reject the petition. Yet, it clearly was in Ranger's interest that the court grant Rossi's petition. This was so because Rossi had taken out a policy with General that extended benefits to the insured's spouse and thus might have covered Gaylor if he were determined to be Rossi's spouse. And, if General's policy had covered Gaylor, General—and not Ranger—might have been liable to compensate Gaylor for the injuries for which he had sued Delaware County.

Ranger and Delaware County therefore had conflicting interests vis-a-vis the disposition of Rossi's marital-status petition. Thus we conclude that under Pennsylvania law Ranger and the county were not in privity with respect to the adjudication of the marital-status petition. The district court erred, therefore, in concluding that

**3.** General attempts to distinguish *Vaksman* on the ground that in that case the insurer had refused to defend the insured and had not been involved in the underlying suit. However, the *Vaksman* court did not rest its decision on this fact, but on the fact that the insurer's interests were at odds with those of the insured on the issue of intentionality, so that even if the insurer had represented the insured in the underlying action, it would not have had the "opportunity to appear and interpose to the pending action" the argument that the tort was intentional. 172 Pa.Super. at 590, 94 A.2d at 189.

The Eastern District of Pennsylvania has recently applied the *Vaksman* rule in this manner. In *Aetna Life and Casualty Co. v. McCabe*, 556 F.Supp. 1342, 1351–52 (E.D.Pa.1983), Judge Shapiro held that an insurance company that had defended its insured in the underlying suit was not estopped from later raising an issue (intentionality) that it did not have the opportunity to raise in the first suit because raising that issue would have been adverse to the interests of the insured. The *Aetna* opinion draws a clear distinction between issues that the insurer had an opportunity to raise earlier and those that it did not have an opportunity to raise, for Judge Shapiro held that the insurer was precluded from relitigating another issue (whether the tort "arose out of" the professional services of the insured physician) that it had an interest in raising in the underlying suit. *Id.* at 1351.

**4.** The county's interest in having the court approve the proposed settlement was heightened by the fact that the damage-limitation provision contained in the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.Con.Stat.Ann. § 8553 (Purdon 1982), which limited the county's liability to damages to $500,000, was being challenged at the time of the settlement hearing. The hearing took place on January 3, 1985. On April 3, 1984, the Court of Common Pleas of Philadelphia County had ruled the damage-limitation provision was unconstitutional. Its opinion was published on June 26, 1985. *Smith v. City of Philadelphia* (Phila.Cty.C.P. June 26, 1985). This case is presently on appeal in the Supreme Court of Pennsylvania.

In the absence of the damage-liability limitation, the county could have been held liable to damages far in excess of $500,000, yet its policy with Ranger was only for the cap amount of $500,000. Thus, the county had a particularly strong interest in the approval of the settlement agreement and counsel for the county, whose services were furnished by Ranger, had an obligation to protect that interest.

**5.** The district court asserted that approval of Rossi's petition would not have threatened the proposed settlement, contending that the resolution of the petition "would have had no effect on the settlement amount, only on the distribution of the settlement funds." *Ranger*, slip op. at 4. It is abundantly clear from the transcript of the January 3, 1985 hearing, however, that a declaration that Rossi was Gaylor's common-law wife would have jeopardized not only the distribution under the settlement but the settlement itself. *See* Trial Transcript of Jan. 3, 1985, *reprinted in* Joint Appendix at 14–19.

that prior adjudication collaterally estops Ranger from litigating the issue in its suit against General.[6]

## IV.

The district court based its grant of General's motion for summary judgment on the conclusion that the prior state court adjudication estopped Ranger from litigating the issue of Rossi's marital status. This holding was legal error. Finding no other grounds for affirmance, we will reverse the summary judgment and remand for further proceedings.

**6.** General contends that as an alternative ground for affirming the district court's summary judgment we can rely on a Pennsylvania statutory provision that provides that state court adjudications of marital-status petitions "shall be conclusive upon all persons concerned." 23 Pa.Stat. § 206 (Purdon 1986). General argues that in light of section 206 Ranger is bound by the state court's determination that Rossi was not Gaylor's common-law wife. We reject this argument.

Section 206 speaks to the collateral effect of determination of status in a proceeding whose purpose is to make that determination. The finding that there is no common-law marital relationship between Rossi and Gaylor was not made in such a proceeding. Rather, it was made in a personal injury action in order to

resolve an objection to a proposed settlement of that action. For that reason we believe a Pennsylvania court would find Section 206 inapposite and would look to the principles set forth in Section 31(3) of the Restatement Second in order to determine the collateral effect of this finding. That section provides,

(3) The determination of a person's status in an action other than one whose purpose is to determine or change that status is conclusive upon the parties to the action, in accordance with the rules of issue preclusion, except in a subsequent action whose purpose is to determine or change the statute in question.

As we have demonstrated previously, under the rules of issue preclusion Ranger is not bound by the determination that no martial relationship exists.