## McCLELLAN REALTY CORPORATION, Plaintiff,

v.

## INSTITUTIONAL INVESTORS TRUST, et al., Defendants.

### Civ. No. 88–0362.

United States District Court, M.D. Pennsylvania.

Dec. 6, 1988.

**734**

Joseph R. Solfanelli, Solfanelli & Butler, Scranton, Pa., John M. Elliott, Louis B. Kupperman, Karen M. Scheller, Francis X. O'Brien, Jr., Baskin, Flaherty, Elliott & Mannino, P.C., Philadelphia, Pa., for plaintiff.

Bernard Smolens, Philadelphia, Pa., David S. Hope, Carl A. Solano, J. David Smith, Williamsport, Pa., for defendants.

## OPINION

MUIR, District Judge.

On March 8, 1988, the Plaintiff, McClellan Realty Corporation ("McClellan"), filed its complaint against the Defendants Institutional Investors Trust, Institutional Investors Corporation, Unicorp American Corporation (collectively known as "the IIT Defendants"), and Chicago Title Insurance Company ("Chicago Title"). On May 13, 1988, the IIT Defendants filed a motion to dismiss Counts II, III, and IV of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Also on May 13, 1988, Chicago Title filed a motion to dismiss Counts I and V of the complaint or, in the alternative, for summary judgment. Oral argument on the motions was held in Williamsport on November 8, 1988, and these motions are now ripe for our disposition.

### I. Background.

McClellan's complaint is derived from the outcome of prior litigation. Both the prior and current litigation are based upon certain notes and mortgages that were sold for approximately $4.2 million by Institutional Investors Trust to Pagnotti Enterprises ("Pagnotti") and then immediately assigned to its subsidiary, McClellan. The original notes and mortgages were part of a transaction in which Institutional Investors Trust lent Blue Coal Corporation, Raymond Colliery Company, Inc., Olyphant Associates and Glen Nan, Inc., $8,530,000. Blue Coal Corporation, Raymond Colliery Company, Inc., Olyphant Associates, and Glen Nan, Inc., executed mortgages on their respective lands to secure the loans. Chicago Title issued a "title insurance policy" in the face amount of $8,530,000. The purpose of the title insurance policy was to protect Institutional Investors Trust and its successors or assigns against the invalidity or unenforceability of the notes and mortgages. The purchase and sale of the notes and mortgages from Institutional Investors Trust occurred on December 15, 1976, and on December 16, 1976, an involuntary petition in bankruptcy was filed involving Blue Coal Corporation, one of the debtors.

On December 12, 1980, the United States filed an action against McClellan seeking to invalidate the mortgages McClellan acquired from Institutional Investors Trust as fraudulent conveyances. The United States brought its action after this Court granted judgment in favor of the United States and against Raymond Colliery Company, Inc., and its subsidiaries in the amount of $2,795,795.16 plus interest for assessed and unpaid federal income taxes for fiscal years 1966, 1967, 1968, 1969, and 1971. *United States v. Gleneagles Investment Co., Inc.*, 584 F.Supp. 671, 677 (M.D. Pa.1984) (*"Gleneagles III"*); *United States v. Gleneagles Investment Co., Inc.*, 565 F.Supp. 556, 560 (M.D.Pa.1983) (*"Gleneagles I"*). The United States argued that the mortgages in the hands of McClellan were void because McClellan had knowledge that the mortgages were fraudulent conveyances. *Id.* at 562. On March 26, 1985, we issued a final order and judgment setting aside the mortgages and liens as fraudulent conveyances. Paragraph 4 of that order subordinates McClellan's liens to a penultimate position of all creditors.

The United States Court of Appeals for the Third Circuit in *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987) reversed our order insofar as it gave McClellan any rights with respect to the property of Raymond Colliery Company, Inc. Upon remand, we issued our Order No. 2 of December 16, 1986, which provided that

1. The assigned IIT mortgages and other security investments of McClellan as against the Trustee in Bankruptcy are void.

2. McClellan possesses no rights as a creditor with respect to the putative assignment of the IIT mortgages.

McClellan's present complaint contains five counts, with Counts I and V asserted only against Defendant Chicago Title, and Counts II, III, and IV asserted only against the IIT Defendants. We will address McClellan's claims against Chicago Title and the IIT Defendants respectively.

## II. Discussion.

In considering a motion for summary judgment, we must ascertain, on the basis of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, whether or not there are any genuine issues of material fact, and if none, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 84 (3d Cir.1982). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986); *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir.1987); *Equimark Community Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is merely colorable or not significantly probative, summary judgment must be granted in favor of the movant. *Anderson*, 106 S.Ct. at 2511. When the record, taken as a whole, could not lead one to find for the nonmoving party, summary judgment must be entered in favor of the movant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

When considering a motion to dismiss, the complaint must be liberally construed and viewed in the light most favorable to the plaintiff. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1934 n. 3, 64 L.Ed.2d 572 (1980); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir.1977). The factual allegations contained in the complaint and every deducible inference therefrom must be accepted as true for the purposes of the motion. *United States v. Mississippi*, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965).

In Count I of its complaint, McClellan claims that it is insured under the title insurance policy which Chicago Title issued to IIT and it demands judgment in the full amount of the policy, $8,530,000, plus legal fees, expenses, and costs. Chicago Title's insurance policy covers the "owner of the indebtedness secured by the insured mort-

gage and each successor in ownership of such indebtedness." (Complaint, ¶¶ 7–8). Therefore, by the very terms of the insurance policy cited by McClellan, there must have been a valid underlying indebtedness in existence in order for Chicago Title to be liable under its policy. McClellan can only recover from Chicago Title if the underlying debt insured by Chicago Title is or was a valid one. The first issue that we must address is whether McClellan is collaterally estopped from litigating in this action the question of whether the entire underlying indebtedness is deemed satisfied.

In this diversity action, Pennsylvania law controls application of the doctrine of collateral estoppel. *Ranger Insurance Company v. General Accident Fire & Life Assurance Corporation, Ltd.*, 800 F.2d 329, 330 (3d Cir.1986); *see also Public Service Mutual Insurance Co. v. Cohen*, 616 F.2d 704, 707 (3d Cir.1980). For a prior adjudication collaterally to estop a party from litigating an issue, four conditions must be met:

(1) The issue decided in the prior adjudication [must be] identical with the one presented in the later action,

(2) There [must have been] a final judgment on the merits,

(3) The party against whom the plea is asserted [must have been] a party or in privity with a party to the prior adjudication, and

(4) The party against whom it is asserted [must have had] a full and fair opportunity to litigate the issue in question in a prior action.

*Ranger*, 800 F.2d at 330–31 (quoting *Cohen*, 616 F.2d at 707; *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)). To assert the doctrine of collateral estoppel, Chicago Title need not have been a party to the prior litigation. *Cohen*, 616 F.2d at 707.

All four elements necessary to invoke collateral estoppel are present in the case before us. First, the issue decided in *"Gleneagles III"*, and also by the United States Court of Appeals for the Third Circuit in *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), was

whether McClellan retained any status as a creditor based upon the notes and mortgages which it purchased from Institutional Investors Trust. Since Chicago Title insured the mortgages now held by McClellan, we are again called upon to decide whether the notes and mortgages it purchased are valid. Second, there was a final judgment on the merits in the *Gleneagles* case. Third, Chicago Title has asserted the plea of collateral estoppel against McClellan, and McClellan was a party to the prior adjudication. Finally, McClellan had a full and fair opportunity to litigate the validity of the mortgages. We read the Court of Appeals decision in *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), to hold that there are no facts that McClellan can prove to show that it is an unsecured creditor as opposed to no creditor at all. Therefore, we conclude that as a matter of law, McClellan had a full and fair opportunity to litigate whether it was entitled to be an unsecured creditor.

In *Gleneagles III* we discussed the status of the indebtedness underlying the mortgages held by McClellan. In that opinion, we noted that McClellan foreclosed on its security interests in certain personalty of Raymond Colliery Company, Inc., at a private sale conducted on February 28, 1978, at which the assets foreclosed upon were sold to Loree Associates for $50,000. *Gleneagles, III*, 584 F.Supp. at 680. In addition, McClellan also sold the stock of Raymond Colliery Company, Inc., held by it as collateral, at a private sale on October 6, 1978, to Joseph Solfanelli as Trustee for Pagnotti for $1.00. *Id.* We ruled that the private sales were commercially unreasonable. *Id.* We denied, however, the request of creditors that we conclude that the debt secured by the IIT mortgages was extinguished because of McClellan's unreasonable foreclosure and execution sales of Raymond Colliery's assets. *Id.* at 681. Consequently, we ruled that McClellan was entitled to a lien against the lands of Raymond Colliery Company, Inc.

The United States Court of Appeals for the Third Circuit in *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d

Cir.1986), ruled, however, that because of McClellan's commercially unreasonable sales, a presumption arose that the value of the collateral sold by McClellan equalled the indebtedness. *Tabor*, 803 F.2d at 1307 (citing *Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 78, 468 A.2d 465, 467 (1983)). Accordingly, the Court of Appeals reversed our decision in *Gleneagles III* to the extent that it recognized McClellan's status as a creditor against the Trustee in Bankruptcy. In our Order No. 2 of December 16, 1986, following the mandate issued to us by the Court of Appeals, we declared the mortgages assigned to McClellan to be void as against the Trustee in Bankruptcy, and also declared that "McClellan possesses no rights as a creditor with respect to the putative assignment of the IIT mortgages." McClellan never raised any objection to this order or took any appeal therefrom. Based upon the foregoing, we conclude that the debt owed to McClellan was extinguished completely with respect to all parties, not just the Trustee in Bankruptcy. Because the debt was extinguished, there is no longer any "indebtedness" to be insured by Chicago Title's title insurance policy and McClellan is collaterally estopped from relitigating this issue. We will direct judgment in favor of Chicago Title on Count I of McClellan's complaint.

■ Count V of McClellan's complaint states that "Chicago Title Insurance Company, intentionally or negligently issued a title insurance policy implicitly certifying to Institutional Investors Trust, and to potential purchasers or assignees of the notes and mortgages including the Plaintiff, McClellan Realty Corporation, that the mortgages represented valid, binding, and enforceable first liens upon the real estate of the borrowing corporations." (Complaint, ¶ 28). McClellan asserts that it justifiably relied upon these implicit misrepresentations. (Complaint, ¶ 29).

One who fraudulently makes a misrepresentation of fact for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation. *Shane v. Hoffmann*, 227 Pa. Super. 176, 181, 324 A.2d 532 (1974). To be justifiable, reliance must be such that common prudence or diligence could not have ascertained the truth. *Reimer v. Tien*, 356 Pa.Super. 192, 514 A.2d 566, 569 (1986) (citing *Shane v. Hoffmann*, 227 Pa.Super. 176, 182, 324 A.2d 532 (1974)). In *United States v. Gleneagles Investment Co., Inc.*, 571 F.Supp. 935, 951 (M.D.Pa.1983), ("*Gleneagles II*"), we discussed McClellan's awareness that the mortgages were fraudulent conveyances. In *Gleneagles II*, we noted that McClellan's parent, Pagnotti Enterprises, was responsible for obtaining the assignment of the IIT mortgages to McClellan. Therefore, we looked to the knowledge and actions of Pagnotti Enterprises. We noted that under the Pennsylvania Uniform Fraudulent Conveyances Act (hereinafter "the Act"), the subsequent purchaser of a fraudulent conveyance or obligation takes subject to the rights of creditors under the Act unless the subsequent purchaser is a "purchaser for fair consideration without knowledge of the fraud at the time of the purchase." *Id.* (quoting 39 Pa.Stat. § 359(1)). We called such a purchaser a "bona fide purchaser." *Id.* We stated that under the Act, Pagnotti Enterprises would attain the status of a bona fide purchaser only if it could establish both that it purchased the IIT mortgages for fair consideration and that it neither knew nor should have known at the time of the purchase that the IIT mortgages were fraudulent conveyances. *Id.* at 951–52. We concluded that Pagnotti Enterprises either knew or should have known that the IIT mortgages were not supported by fair consideration and we also concluded that there were sufficient facts known to Pagnotti Enterprises which would have alerted a reasonably prudent person to the likelihood that the IIT mortgages were defective, and should thus have made further inquiry into the background of the IIT mortgages. *Id.* at 952. Our detailed findings of fact in *Gleneagles II* indicated that Pagnotti Enterprises did not obtain the mortgages in good faith. *Id.* at 952–53.

The United States Court of Appeals for the Third Circuit in *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1299 (3d Cir.1986), concluded that although McClellan had attempted to distance itself from Pagnotti, it could not do this successfully. The Court in *Tabor* stated that a well recognized rule provides that an assignee gets only those rights held by its assignor and no more. *Id.* Accordingly, the Court ruled that because McClellan's rights as an assignee were no greater than Pagnotti's and because McClellan did not show that our findings of fact in *Gleneagles II* were clearly erroneous, McClellan had the same quality of faith as that possessed by Pagnotti. Accordingly, we conclude that McClellan stands in the shoes of Pagnotti Enterprises with respect to the purchase of the IIT mortgages, and that Pagnotti Enterprises' lack of good faith means that McClellan cannot now successfully put forth a claim that it justifiably relied upon any misrepresentations which may have been made. Furthermore, we do not recall that any fresh representations were in fact made by Chicago Title directly to either Pagnotti or McClellan when Pagnotti bought the mortgages and obligation and McClellan makes no such claim. We shall dismiss Count V of McClellan's complaint.

■ Counts II, III, and IV of the complaint allege causes of action against the IIT Defendants. Count II of McClellan's complaint seeks recission of the sale of notes and mortgages by Institutional Investors Trust that occurred on January 26, 1977. Under Pennsylvania law, recission is to be granted only when the parties to the contract can be placed in their former positions with regard to the subject matter of the contract. *Sullivan v. Allegheny Ford Truck Sales, Inc.*, 283 Pa.Super. 351, 423 A.2d 1292, 1295 (1980). When the party seeking recission cannot restore the opposite party to the status quo recission is unavailable as a remedy. *Associated Hardware Supply Co. v. Big Wheel Distributing Co.*, 355 F.2d 114, 120–21 (3d Cir.1965). As we have already noted, McClellan extinguished the underlying debt by its own private sales of certain of the collateral, thereby causing the notes and mortgages evidencing and securing the debt to be satisfied. *Tabor*, 803 F.2d at 1306–07. McClellan has permanently and irreparably altered the status quo.

Fraudulent misrepresentation may also serve as a basis to rescind a contract. *Berger v. Pittsburgh Auto Equipment Co.*, 387 Pa. 61, 127 A.2d 334, 335 (1956). McClellan's claim fails on this issue as well. As we previously noted, the actions of McClellan's principal, Pagnotti Enterprises, in the underlying transaction means that McClellan is unable to raise the issue of fraud in this case. *See Tabor*, 803 F.2d at 1299 (holding that McClellan is charged with having the same quality of faith as Pagnotti).

Finally, on the question of recission, we note that a party who discovers facts which warrant recission of his contract must act promptly, and in case he elects to rescind, he must notify the other party without delay, or within a reasonable time. *Fichera v. Gording*, 424 Pa. 404, 227 A.2d 642 (1967). In the case before us, rather than acting without delay to rescind the sales contract upon discovering the insolvency of the indebted companies, McClellan chose to foreclose on the assets in a commercially unreasonable manner.

■ Count III of McClellan's complaint alleges a cause of action against the IIT Defendants for breach of warranty. The question of warranties in connection with the sale of the mortgages in the case before us was previously litigated in *Gleneagles II*. Accordingly, the doctrine of collateral estoppel is applicable once again. In *Gleneagles II*, we made the express finding of fact that

109. At the December 14 and 15, 1976, meetings between Pagnotti Enterprises and IIT, counsel for IIT emphasized that the mortgaged debts were being sold "as is" and with absolutely no representations or warranties.

*United States v. Gleneagles Investment Co., Inc.*, 571 F.Supp. 935, 944 (M.D.Pa. 1983).

All of the elements of collateral estoppel discussed earlier in this opinion are again satisfied in Count III of McClellan's complaint. McClellan has failed to present any new facts on this question, and is unable to point to any express language of warranty contained in any of the documents which it claims support its cause of action. McClellan's claim for breach of warranty is without merit.

■ McClellan's third and final cause of action against the IIT Defendants, contained in Count IV of its complaint, alleges unjust enrichment. A cause of action for unjust enrichment requires the Plaintiff to prove two elements: first, an enrichment to another; second, a resulting injustice if recovery for the enrichment is denied. *Efco Importers v. Halsobrunn*, 500 F.Supp. 152, 157 (E.D.Pa.1980) (Cord, C.J.). The quasi-contractual doctrine of unjust enrichment is inapplicable, however, when the relationship between the parties is founded upon a written agreement or express contract. *Id.* at 158 (quoting *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443, 448 (1969)). The relationship of the parties in this case is governed by the written agreement of sale between Institutional Investors Trust and Pagnotti Enterprises. (IIT Defendants Motion for Summary Judgment, Exhibit C). As Pagnotti's assignee, McClellan is bound by the terms of the original agreement of sale between Pagnotti and Institutional Investors Trust.

For the foregoing reasons, we conclude that, even if all of McClellan's claims are deemed to be true, McClellan has failed to establish a basis to recover damages against either Chicago Title or the IIT Defendants. We conclude that all Defendants are entitled to judgment in their favor as a matter of law and we will issue an appropriate order.

### ORDER

1. The motion of Chicago Title Insurance Company to dismiss or, in the alternative, for summary judgment on Count I of McClellan Realty Corporation's complaint is granted insofar as it seeks summary judgment in its favor and is denied in all other respects.

2. The motion of Chicago Title Insurance Company to dismiss or, in the alternative, for summary judgment on Count V of McClellan Realty Corporation's complaint is granted insofar as it seeks to dismiss this count and is denied in all other respects as to Count V.

3. McClellan Realty Corp. may file a new complaint within 20 days as to the subject matter in Count V only. Such complaint shall be complete within itself and without reference to McClellan's previously filed complaint.

4. Failure of McClellan to file an amended complaint in compliance with ¶ 3 of this order will result in dismissal of this case.

5. The motion of Institutional Investors Trust, Institutional Investors Corporation, and Unicorp American Corporation to dismiss or, in the alternative, for summary judgment on Counts II, III, and IV of McClellan Realty Corporation's complaint is granted insofar as it seeks summary judgment in their favor and is denied in all other respects.

6. The Clerk of the Court shall enter judgment in favor of Institutional Investors Trust, Institutional Investors Corporation, Unicorp American Corporation, and Chicago Title Insurance Company on Counts I, II, III, and IV.