

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-27-2006

# Essex Ins Co v. Starlight Mgmt Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3135

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Essex Ins Co v. Starlight Mgmt Co" (2006). *2006 Decisions.* Paper 415.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/415

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-3135

ESSEX INSURANCE COMPANY,
                                        Appellant

v.

STARLIGHT MANAGEMENT CO. and RMJC

On Appeal from the United States District Court
for the Eastern District of Pennsylvania,
(Civ. No. 01-cv-04049)
District Judge: Hon. Harvey Bartle, III

Argued: May 15, 2006

Before: McKEE and GARTH, Circuit Judges,
and LIFLAND, District Judge[*]

(Opinion filed:  September 27, 2006 )

Richard W. Yost, Esquire (Argued)
Phillip J Meyer, Esquire
Yost & Tretta
Two Penn Center Plaza
1500 John F. Kennedy Blvd.
Suite 610
Philadelphia, PA 19102
Attorney for Appellant

---

[*] The Hon. John C. Lifland of the United States District Court for the District of New Jersey, sitting by designation.

Joel E. Oshtry, Esquire (Argued)
Oshtry & Oshtry
1819 John F. Kennedy Blvd.
Philadelphia, PA 19103
Attorney for Appellee

**OPINION**

McKEE, Circuit Judge.

Essex Insurance Company appeals the District Court's grant of summary judgment in this declaratory judgment action that Essex filed to determine its obligations under an insurance policy it had issued to RMJC (the "Policy").[1]  The suit was prompted by a tort action filed against RMJC in state court to recover damages for injuries allegedly caused by RMJC's employees.  In this coverage dispute, Essex claims that it was not obligated to indemnify RMJC or defend it against that action because the damages there were specifically excluded from coverage by the language of the Policy.  After cross motions for summary judgment were filed, the District Court awarded RMJC summary judgment on the issue of Essex's duty to defend RMJC.  The court stayed resolution of Essex's obligation to indemnify pending completion of the state court litigation. That litigation ultimately resulted in a jury award in favor of the plaintiff and the District Court thereafter granted RMJC's motion for summary judgment as to Essex's obligation to indemnify it for that award.  This appeal followed.

---

[1] Because the distinctions are not material to the issues before us, we will refer collectively to RMJC, Inc., and Starlight Management Company, as "RMJC."

2

Although we conclude that the District Court correctly ruled that Essex had a duty to defend RMJC, we hold that the court erred in ruling that the Policy exclusions did not apply as a matter of law. Accordingly, we will reverse and remand for further proceedings on the issue of indemnification.

## I. Background

Mark and Audrey Jaworski sued RMJC and others in the Court of Common Pleas of Philadelphia County seeking compensation for injuries Mark had sustained at the Show and Tel Showbar in Philadelphia, Pennsylvania. That establishment is a "bring your own beverage" nightclub owned by RMJC. It offers what has euphemistically come to be known as "adult entertainment" that advertises "totally nude live dancing girls." In the amended complaint they filed in state court, the Jaworskis alleged that Mark was attending a bachelor's party at the Show and Tel when he was struck (or pushed) without provocation by an RMJC employee. App. 175a. Jaworski was then removed from the club by force and sustained serious and permanent injuries when he fell down some steps. App. 175a-76a.

The amended complaint was grounded in negligence, gross negligence and recklessness. App. 176a. It alleged, *inter alia*, that RMJC employees "mistakenly believed that [Jaworski] was uncooperative and disorderly" and, operating under that mistaken belief, they "failed to use due care . . . in handling and physically ejecting [him]." App. 176a. The complaint also alleged that Jaworski was injured as a result of RMJC's failure to "exercise due care in the selection and investigation of its employees"

3

and its failure to "provide adequate training to its security employees." *Id.*

When the Jaworskis filed the suit, RMJC was the named insured under the Policy. RMJC notified Essex of the suit as required under the Policy, and Essex filed the instant declaratory judgment action in District Court. As noted at the outset, Essex claimed that it had no duty to defend RMJC against the tort action, and that it had no duty to indemnify for any recovery the plaintiffs may be awarded in that action. Essex based that argument upon the "Assault and/or Battery" and the "Hiring and/or Supervision" exclusions of the policy. The former stated that coverage was not offered for "any claim, suit or expense arising out of . . . Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person." App. 287. The latter excluded coverage for "any claim, suit or expense arising out of . . . . Charges or allegations of negligent hiring, training, placement or supervision." *Id.*

RMJC argues that the focus of the state action was whether "RMJC should be held liable for negligence because it breached the standard of care by leaving [Jaworski] at the top of the steps and not physically escorting and walking him down the flight of stairs." Appellees' Br. 17. RMJC claims "Jaworski did not present a cause of action at trial based on negligent hiring/supervision," *id.* at 13, and that assertion is consistent with our review of the record from the state tort action.[2]

---

[2] Indeed, Essex only devotes 3 paragraphs of its twenty-two page brief to arguing
(continued...)

4

During the trial in state court, Jaworski testified that he had been standing inside the Show and Tel when he was approached by Terrence Benson, a security guard employed by RMJC.[3] Benson purportedly told Jaworski to "get the f... out of the way." App. 627a. Jaworski said he attempted to comply, but had difficulty moving because the nightclub was extremely crowded. *Id.* Jaworski testified that he then asked Benson what cigar he was smoking in an effort "to lighten the mood a little." *Id.* The attempted diplomatic mediation was apparently less successful then Jaworski would have liked because "seconds later [he] turned slightly and was punched by [Benson] and went flying on [his] back." *Id.* Jaworski testified that he then "proceeded to get punched and kicked and assaulted" while he was on the ground, and was "picked up, dragged, grabbed, carried, to the door" and "thrown down the stairs" of the Show and Tel. App. 627a - 28a. Jaworski's brother-in-law, Stephen McHenry, who was standing with Jaworski at the time of the altercation, testified that he saw the initial blow, and "Mark flew about 10 feet . . . . At that point, everyone just kind of pounced on him." App. 696a. McHenry did not see how Jaworski left the club. *Id.*

None of the security personnel involved in the alleged altercation testified at trial, but RMJC manager, Kevin Stone, testified that he saw Jaworski on top of the landing of

---

[2](...continued)
that the exclusion for negligent hiring applies to the circumstances here. Appellant's Br. at 21-23.

[3] Jaworski learned Benson's name at some point after the altercation. App. 628a.

the club cursing and yelling at the bouncers. App 687a. Stone stated that when he saw Jaworski at the door of the club, noone was touching him and there was "no bouncer around him for at least three (*sic*) to 4 feet." App. 667a.

Scott DiGise, a maintenance worker at Show and Tel, testified that he was not able to clean up a large spill on the floor of the club because Jaworski was standing in the middle of it. App. 752a. DiGise testified that he twice asked Jaworski to move. Jaworski appeared drunk, and was uncooperative and verbally abusive, forcing DiGise to get help from the security personnel. *Id.* DiGise testified that he asked Benson to speak with Jaworski. Although DiGise said he could not hear the conversation, he did see Benson bear hug Jaworski and walk him around the corner. App 754a.

As noted above, Jaworski's suit was based on negligence only, and not on assault. The Verdict Form given to the jury asked whether RMJC was negligent and whether any such negligence was a "substantial factor" in bringing about the harm to Jaworski. App. 839a. The jury returned a verdict in favor of the Jaworskis, finding that RMJC was negligent and fully liable for Jaworski's injuries.[4]

Essex eventually satisfied that state court judgment and then filed Supplemental Briefs in support of its original request for declaratory relief from the obligation to indemnify under the Policy. Thereafter, the District Court denied Essex's motion and

---

[4] The resulting award was affirmed on appeal to the Pennsylvania Superior Court, *Jaworski v. RMJC, Inc.*, 858 A.2d 1290 (Pa. Super. Ct. 2004) (table), and the Pennsylvania Supreme Court, *Jaworski v. RMJC, Inc.*, 582 Pa. 664 (Pa. 2005) (table).

granted summary judgment to RMJC.  The court thus held that the Policy obligated Essex to indemnify RMJC for the tort award against RMJC as a matter of law.  Essex appeals, claiming that the District Court erred in requiring it to defend and indemnify RMJC.

## II. Discussion.[5]

In its brief, Essex states that "[w]hether the court below erred in holding that the . . . allegations of negligence in the [Jaworski] complaint . . . required Essex to defend RMJC, even though the factual allegations . . . describe an assault . . . within the scope of the 'Assault and/or Battery' Exclusion and/or the 'Hiring and/or Supervision' exclusion of the Essex policy," is an issue presented for review, *see* Appellant's Br. 1.  However, Essex never addresses the Hiring and/or Supervision issue in the "Argument" portion of its brief.  We have previously explained that including an issue in the "Statement of Issues Presented for Review" does not raise an issue on appeal if the issue is not also discussed in the "Argument" portion of a party's appellate brief.  *See Matsko v. United States*, 372 F.3d 556, 558, n.6 (3d Cir. 2004).  Moreover, Essex has already defended RMJC and has not appealed the District Court's order requiring it to do so.  Accordingly, that issue is now moot and we need not discuss Essex's duty to defend except insofar as it is helpful to our discussion of the duty of indemnification.

"The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d

---

[5] All parties agree that this action is controlled by Pennsylvania law.

649, 651 (Pa. Super. Ct. 1994). That expectation is governed by the unambiguous language of the insurance policy. *Id.*

As noted above, this dispute focuses on the Policy's Assault and/or Battery exclusion. Under Pennsylvania law, an individual is guilty of the crime of assault if he/she "attempts to cause or intentionally or recklessly causes bodily injury to another" or "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. C.S.A. § 2701. The tort of assault is defined as "an intentional attempt by force to do any injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994).

Essex relies upon *Acceptance Ins. Co. v. Seybert*, 757 A.2d 380 (Pa. Super. Ct. 2000) and *Erie Insurance Exchange v. Filder*, 808 A.2d 587 (Pa. Super. Ct. 2002) to argue that the Jaworski complaint clearly alleges that Mark's injuries arose from an assault even though it is cloaked in negligence. Neither case aids Essex to the extent Essex claims.

In *Seybert*, the insured, Michael Seybert, sued a bar and several individuals who allegedly attacked him "following a night of drinking" that began at the defendant bar. 757 A.2d at 381. He alleged that the attack was the direct result of the bar serving his assailants after they had become visibly intoxicated, thus "rendering them incapable of safe and prudent conduct, and contributing to the attack." *Id*. The bar was covered under a policy of liability insurance issued by Acceptance Insurance Company, and Acceptance

8

brought a declaratory judgment action in an effort to have the court declare that the resulting injuries were within the scope of the assault and battery exclusion in the policy. Acceptance prevailed, and the insureds appealed. On appeal, the Superior Court agreed that Acceptance had no duty to defend. The court compared the allegations in the complaint before it with the allegations in the complaint at issue in *Britamco, supra.*[6] and concluded that "Seybert's complaint . . . contains no allegations that Seybert's actual injuries were caused in any way other than by assault and battery by the [individuals] in the . . . parking lot. There is no suggestion that Seybert's injuries were an accident, as was suggested in [*Britamco*], or were negligently caused by [the bar's] employees." *Id.* at 383. As we noted above, that is not the case here. The Jaworskis' amended complaint clearly includes allegations that could lead a fact finder to conclude that Mark's injuries are a result of negligent conduct, and the complaint is carefully tailored to request relief only for RMJC's negligence.[7]

 *Fidler* affords Essex no more support than *Seybert*. Fidler was sued in a tort action

---

 [6] The *Britamco* court held that because the plaintiff, who had been struck in a bar, asserted alternative theories of liability sounding in assault and battery, negligent infliction of emotional distress and claims of general negligence, the insurer owed a duty to defend. 636 A.2d at 652.

 [7] We also note that it is of no consequence under Pennsylvania law that the original Jaworski complaint did sound in assault because allegations of assault are not contained in the amended complaint before us. In *Fidler*, the court noted that the "original complaint included descriptions of the incident as an 'assault and battery.' This language was eliminated in the amended complaint, presumably to avoid application of [the] exclusionary clause." 808 A.2d at 590, n.2. The court then evaluated the duty to defend based solely on the amended complaint.

by parents who alleged that he "threw [their minor son] with such great force that the Plaintiff's head struck the wall and a desk causing him to fall unconscious to the floor. The complaint further alleged that, in so behaving, [the defendant] failed to act with due and reasonable care . . . [and that he acted] negligently." 808 A.2d at 589. Fidler requested a defense from Erie Insurance under his homeowners' policy. Erie filed a declaratory action arguing that since the injury resulted from an assault, coverage was excluded. The court agreed with Erie because it was clear from the allegations in the complaint that the injuries were caused by Fidler's intentional conduct. The court explained: "[r]egardless of the language used in the complaint to 'create' an issue of fact surrounding Fidler's specific intent, it is clear from the undisputed facts alleged therein that Fidler's assault . . . was intentional." 808 A.2d at 591.

Again, that is not our situation. Although one could argue that the amended Jaworski complaint alleges an intentional assault by RMJC's employees and negligent failure to train, we think the complaint more closely resembles the complaint in *Britamco,* which the court discussed in deciding *Seybert.* The *Seybert* court noted that the complaint in *Britamco* "asserted alternative theories of liability sounding in assault and battery . . . and claims of general negligence." *Seybert*, 757 A.2d at 383. The allegations of negligence were sufficient to trigger the insurance company's duty to defend even though the allegations of assault and battery would have precluded coverage if the injuries had arisen out of the assaultive behavior. Our case is even clearer because no such alternative theory is pled. The amended complaint clearly seeks recovery based only

10

upon negligence. Based upon the allegations of the amended complaint, it cannot be determined as a matter of law that Jaworski's injuries "arise out of" assault and/or battery.[8]

The Policy provided coverage for "bodily injury" which "is caused by an 'occurrence' that takes place in the 'coverage territory.'" App. 132a. Given the unambiguous language of the Policy, Jaworski's allegation that he was injured when RMJC employees negligently "failed to use due care and proper restraint methods, in handling and physically ejecting [him] while in the mistaken belief that he was uncooperative" falls within RMJC's "reasonable expectation" of coverage. Accordingly, the District Court correctly concluded that Essex had a duty to defend RMJC in the Jaworski tort action. As we explained earlier, that duty extends to potential claims as well as claims that are actually covered. *See United Services Auto. Ass'n. v. Elitzky*, 517 A.2d at 985.

Essex claims that it was entitled to summary judgment on its claim for indemnification because, although Jaworski's recovery was based on the theory of negligence, "the undisputed actions of RMJC's employees constitute an assault and/or a battery within the meaning of the Essex policy." Appellant's Br. 11. According to

---

[8] We also note that, the injuries do not necessarily arise out of a failure to train or supervise as a matter of law, even though that exclusion was not really at issue in Essex's summary judgment motion. Of course, we do not suggest that Essex is in any way precluded from establishing that the exclusion for negligent hiring/supervision applies on remand.

11

Essex, "Jaworski obviously could not have sought damages from RMJC, but for that assault." *Id.* at 20. However, in relying upon this argument to request summary judgment, Essex presented no evidence beyond the state court complaint and trial transcripts.[9] The District Court rejected Essex's motion, because "the evidence was sufficient for the jury to find that RMJC's employees were negligent," and the court entered summary judgment in favor of RMJC. *Essex Ins. Co. v. RMJC*, No. 01-4049, 2005 WL 1221756, at *3 (E.D. Pa. 2005).

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). A genuine issue is one in which the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On this record, Essex was not entitled to summary judgment on its claim that it was not obligated to indemnify RMJC, and the District Court correctly denied that motion. Although Essex argues that the evidence of assault on Jaworski was "undisputed," that contention is based almost entirely on the fact that none of the security personnel involved in the altercation testified at trial. The argument is flawed for several reasons.

---

[9] For reasons not at all apparent to us, Essex even failed to produce the additional evidence that Terrence Benson had been convicted of simple assault in Philadelphia Municipal Court for his conduct at the Show and Tel that night. *See* App. 618a.

12

First, as Essex concedes, "the issue of whether [RMJC's] conduct amounted to assaultive behavior was never directly litigated." App. 423a. In fact, Jaworski's counsel made clear throughout the trial that the case was about what "what happen[ed] at the doorway area," about "the ejection." App. 609a; *See also* App. 796a. RMJC was defending against allegations that it was negligent in its failure to ensure Jaworski got down the steps safely after he was removed.

Second, RMJC's decision to not call its bouncers as witnesses does not constitute an adoption of Jaworski's testimony. Kevin Stone estimated that the bouncers were typically 6'6" and weighed around 350 pounds. App. 688a. RMJC may well have assumed that allowing the jury to see their not insubstantial bouncers would do more harm than good, regardless of the quality of their testimony.

Third, rather than rely upon its imposing bouncers to rebut Jaworski's claim that he was assaulted without provocation and forcefully thrown down the steps, RJMC introduced testimony that Jaworski was loud, disruptive, and intoxicated. This testimony would have allowed the jury to find that Jaworski fell down the steps rather than being thrown or pushed, and that his injuries arose from his own inebriation, and not out of the actions of RJMC's employees.[10]

Jaworski claimed that he was standing inside the Show and Tel when Benson

---

[10] We realize, of course, that the jury found that Jaworski as not contributorily negligent. That finding was relevant to Jaworski's ability to recover for RMJC's negligence, but it is not conclusive on the issue of whether his injuries "arose out of" an assault, as that issue was never litigated.

13

attacked him without provocation. App. 627a. However, DiGise tells an entirely different story. He testified that Jaworski was drunk, belligerent, abusive, and uncooperative to such a degree that DiGise was forced to seek help from Benson. App 752a. Although Jaworski denies even seeing DiGise, app. 636a, DiGise's testimony clearly contradicts Jaworski's claim of an unprovoked attack.

Moreover, even if the physical altercation was tantamount to an assault, it cannot be said as a matter of law that Jaworski's injuries "arose out of" that assault based on the state record. It is clear that Jaworski sustained injuries when he fell down the stairs of the Show and Tel, and he testified that he was carried to the door and thrown down the stairs. App. 627a. However, Stone (RMJC's manager) testified that he saw Jaworski standing on the landing of the Show and Tel screaming and cursing. App 687a. As we noted above, Stone stated that noone was touching Jaworski and that no bouncer was within three or four feet of him. App. 667a. Clearly, if Jaworski was carried out of the club and thrown down the stairs, he did not *also* stand around on the landing screaming at the bouncers. Jaworski was emphatic that he was not "pushed out" of the door but "thrown down" the stairs. App. 628a. There is clearly a factual dispute about the cause of his injury as well as the circumstances leading up to it.

Thus, none of the testimony Essex relies upon to prove an assault can be considered "proven at trial." The District Court could not possibly have evaluated the veracity of the trial testimony in the state tort action, nor can we. Only the jury that heard

14

the testimony can determine which facts were proven. However, because the jury was only asked to decide if RMJC was negligent and whether that negligence caused Jaworski's injuries, a factual dispute remains about whether an assault occurred and whether, if it did occur, Jaworski's injuries "arose out of" it. Additional testimony is required to resolve those factual issues.

This case, and Essex's attempt to rely only upon the record from the state tort action to obtain declaratory relief in a coverage dispute, illustrates the dilemma that insurance companies face in this situation. Essex was obligated to defend RMJC against Jaworski's claim of negligence in state court under the terms of the Policy. Thus, it had an ethical obligation to RMJC, its client, to vigorously defend it against *all* liability. In defending against Jaworski's claim of negligence, Essex could not argue that its client's employees assaulted Jaworski, even though such an assault could have relieved Essex of the duty of indemnification under the Policy. Thus, Essex's obligation to defend its insured against liability in the tort action deprived it of any opportunity to establish that it was not obligated to indemnify RMJC for the resulting judgment. That is what it attempted to do in this coverage action, but it could not accomplish that objective by relying only upon a state court record where the action was tried on a theory of negligence; an "occurrence" covered under the Policy.

This "Catch-22," was first addressed in Pennsylvania in *Vaksman v. Zurich General Accident & Liability Ins. Co.*, 94 A.2d 186 (Pa. Super. Ct. 1953). There, the

15

court had to determine whether a tort judgment obtained on the basis of negligence precluded the insurer from denying coverage based upon the latter's contention that the loss actually resulted from the intentional actions that were excluded under the liability policy it had issued to the defendant in the underlying tort action. In holding that the tort judgment did not automatically trigger the duty of indemnification, the court explained:

> It was not possible for [t]he company . . . to defend the insured, and at the same time to protect its own interests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints.

*Id*. at 188 (internal quotation marks omitted, ellipsis in original).

We addressed a very similar situation in *Ranger Ins. Co.*, *v. General Accident Fire and Life Assur. Corp*. 800 F.2d 329 (1986). There, we cited *Vaksman* and *Dally v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 97 A.2d 795 (1953), to explain the conflict of interest that arises between an insurance company and its insured when an issue that would determine coverage has been litigated in a prior suit between the insured and a third party. 800 F.2d at 331.

The District Court cited recognized this dilemma. In granting Essex's motion for summary judgment, the court explained:

> In the underlying action, Essex and RMJC likewise had a conflict of interest. It was in the interest of Essex to assert that Jaworski suffered from an assault and battery since if successful Essex would not have been required to indemnify RMJC. However, this tact would have been highly prejudicial

16

to RMJC if it had been left bare of insurance coverage. Consequently, it was not until the conclusion of the *Jaworski* action and after the judgment had been paid that Essex could fairly litigate the issue of indemnification without harming RMJC at the underlying trial.

*Essex Ins. Co. v. RMJC*, No. 01-4049, 2005 WL 1221756, at *5 (E.D. Pa. 2005).

Nevertheless, Essex's motion for summary judgment on its request for a declaration that it was not obligated to indemnify was premature. Essex apparently believed that evidence of assaultive behavior in the tort action was sufficient for its purposes even though the jury's verdict only established that RMJC was negligent. However, its failure to present additional evidence on this issue is fatal to its motion for summary judgment because material issues of fact remain.

Accordingly, although Essex was not entitled to summary judgment on the basis of the state court record, it is also clear that RMJC was not entitled to summary judgment on its claim for indemnity. As is clear from our entire discussion of Essex's duty to indemnify, disputed issues of material fact also preclude granting RJMC's cross motion for summary judgment on Essex's claim that it owes no duty of indemnification. Rather, in its declaratory judgment action, Essex must litigate whether Jaworski's injury actually "arose out of" an assault or battery (or the hiring/supervision exclusion), and RMJC will be free to rebut evidence to that effect.

### III. Conclusion.

For the reasons set forth above, we will vacate the order granting summary judgment in favor of RMJC on the issue of indemnification and remand to the District

17

Court for further proceedings consistent with this opinion.