**QBE INSURANCE CORP., Appellee**

**v.**

**M & S LANDIS CORPORATION t/d/b/a Fat Daddy's, Fat Daddy's Night Club, and Fat Daddy's at the Woods; Matthew Landis, Sean Landis, John McCoy, Anthony Hendrickson, Shawn Rohrbaugh, Adam Miller, Michael Trone, Darin Hosier, Montez Young, as Administrator of the Estate Of David A. Potter, Jr., Deceased, and Melanie Sharp,**

**Appeal of M & S Landis Corporation, et al., Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2006.

Filed Jan. 10, 2007.

---

Gregory E. Gettle, York, for appellant.

James DeCinti, Harrisburg, for QBE Ins., appellee.

BEFORE: MUSMANNO, TODD, and TAMILIA, JJ.

OPINION BY TODD, J.:

¶ 1 In this declaratory judgment action, M & S Landis Corporation t/d/b/a Fat Daddy's, Fat Daddy's Night Club, Fat Daddy's At The Woods, Matthew Landis, Sean Landis, John McCoy, Anthony Hendrickson, Shawn Rohrbaugh, Adam Miller, Michael Trone, and Darin Hosier appeal the December 13, 2005 order granting summary judgment in favor of QBE Insurance Corp. ("QBE"). We reverse and remand for entry of summary judgment in favor of Appellants.

¶ 2 On May 24, 2004, Montez Young, as administrator of the estate of David A. Potter, Jr., and Melanie Sharp brought a wrongful death and survival action against Appellants alleging that Potter was smothered to death when he was evicted by various Appellants from the Fat Daddy's Nightclub in York, Pennsylvania. Their complaint alleged:

> On June 1, 2003, David A. Potter, Jr. was smothered to death as a result of [Appellants'] negligent conduct in forcibly evicting him from Fat Daddy's Nightclub. [Appellant] bouncers wrestled Mr. Potter down the stairs, at times in a choke hold, and then threw him face down on the ground, at the direction of the owners of the nightclub. They then laid on top of him restricting his ability to breath, causing his death.

(Complaint (Exhibit B to Complaint for Declaratory Judgment) (hereinafter "Underlying Complaint"), 5/24/04, at ¶ 1 (R.R. 37a.)) The complaint alleged that Potter's death was the "direct and proximate result of the negligence and carelessness" of Appellants and Appellants' agents, asserting that Appellants, *inter alia*, improperly restrained Potter, failed to properly train and supervise its staff, failed to adequately staff the nightclub, failed to recognize that Potter posed no risk, and failed to render first aid. (*Id.* at ¶¶ 52–54 (R.R. 46a–47a).)

¶ 3 As a result of the claims alleged in this suit, Appellants sought defense and indemnification from QBE pursuant to a commercial general liability insurance policy with QBE. QBE denied coverage and, on September 7, 2004, QBE filed this declaratory judgment action seeking a declaration that it had no obligation to defend or indemnify Appellants. QBE asserted that the claims in the underlying complaint did not constitute an "occurrence" under the policy, and that the alleged conduct was excluded from coverage based upon the assault and battery exclusion in the policy.

¶ 4 QBE filed a motion for summary judgment, and Appellants filed a cross-motion for summary judgment. On December 13, 2005, the trial court granted QBE's motion for summary judgment and denied Appellants' motion. This timely appeal followed.

On appeal, Appellants ask:

1. Whether the trial court erred in finding that the allegations in the underlying civil action do not amount to an "occurrence" as defined in the policy of insurance?

2. Whether the trial court erred in finding the allegations in the underlying action are excluded under the "assault and battery" provision, which the court erroneously found to be clear and unambiguous?

3. Whether the trial court erred in failing to recognize the "use of reasonable force" provision rendering defense and indemnification to the policy holders applicable on the reasonable force provision alone and/or due to the reasonable force provisions inconsistent/ambiguous application with the assault and battery exclusion rendering the assault and battery exclusion void in general

against public policy and/or nonenforceable?

(Appellants' Brief at 4.)

¶ 5 Our standard of review of an order granting or denying a motion for summary judgment is well established:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 6 Furthermore, when construing the language of an insurance policy, our goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100 (1999). If the language is not clear, it is construed in favor of the insured, but where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Id.; Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Contractual terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co.,* 557 Pa. at 606, 735 A.2d at 106.

¶ 7 Finally, an insurer's obligation to defend an action against the insured "is fixed solely by the allegations in the underlying complaint. As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover." *Erie Ins. Exch. v. Fidler,* 808 A.2d 587, 590 (Pa.Super.2002). Moreover, to determine if there is coverage, we must look to the *facts* alleged in the underlying complaint, not the cause of action pled. *Donegal Mut. Ins. Co. v. Baumhammers,* 893 A.2d 797, 811 (Pa.Super.2006) *(en banc), appeal granted,* 908 A.2d 265 (Pa. 2006). Indeed, "to allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." *Mutual Ben. Ins. Co. v. Haver,* 555 Pa. 534, 539, 725 A.2d 743, 745 (1999).

¶ 8 In their first issue, Appellants assert that the trial court erred in finding that the allegations in the underlying civil action were not an "occurrence" under the policy. The policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence" where "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy (Exhibit A to Complaint for Declaratory Judgment), at 14 (R.R. 31a).) While admitting that the complaint describes Potter's altercation with Appellants with such intentional terms as "forcibly," "violently," and "seized, held and detained," Appellants maintain that, at its core, the complaint alleges Appellants' negligence: "[I]t is not alleged that the Fat Daddy Defendants assaulted the decedent as the cause of death, but rather that, after eviction, they negligently restrained

[Potter] or improperly restrained him causing his death." (Appellants' Brief at 11.) Thus couched, Appellants contend that the complaint alleges conduct—negligence—which constitutes an occurrence under the policy. For the reasons below, we agree.

¶ 9 We find that this case is controlled by this Court's *en banc* decision in *Donegal Mut. Ins. Co. v. Baumhammers, supra*. In that case, parents were sued after their mentally-unstable adult son who resided with them went on a shooting rampage, killing five people and severely injuring another. The wrongful death and survival actions alleged that the parents were negligent, *inter alia*, in failing to remove the gun used in the rampage from their son's possession, and for failing to alert authorities or mental health care providers about his violent propensities. The parents sought defense and indemnification under their primary and excess homeowners' policies. The primary insurance policy's definition of "occurrence" was the same as in the instant case, and, with respect to that policy, on appeal, we addressed whether the allegations in the underlying complaints fell within that definition of occurrence—that is, whether they were "an accident."

¶ 10 After an extensive analysis of the relevant caselaw, including an explicit disapproval of a previous panel decision of this Court, we rejected the insurer's argument that, simply because the immediate act causing the bodily injury—the shootings—was undeniably intentional, that fact precluded a determination that *the parents' negligence*, which preceded the intentional shootings, was an accident: "[T]he main thrust of our Pennsylvania caselaw warrants a conclusion, and thus we hold, that negligence leading to intentional acts may nevertheless be considered an 'accident,' and thus an 'occurrence' where so

defined." *Id.* at 810. Then, analyzing the factual allegations in the underlying complaints, we reasoned that they fell within the policy's definition of occurrence:

Parents were alleged to have acted negligently, and this negligence is supported by numerous, specific, factual allegations, including that Parents should have taken possession of Baumhammers' gun or alerted authorities or mental health care providers about Baumhammers because they knew or should have known of his dangerous propensities and his possession of the gun. For the reasons discussed above, we find that Parents' alleged negligence, no less negligent because it is alleged to have led to Baumhammers' intentional attacks, can be considered an "accident" triggering an occurrence under the Donegal policy.

*Id.* at 811.

¶ 11 We now examine the allegations contained in the underlying complaint in the instant case. The underlying complaint alleges, in relevant part:

41. Defendants wrestled David A. Potter, Jr. down the stairs from the second floor to the first floor.

42. Defendants placed David A. Potter, Jr. in a choke hold while violently and forcibly evicting him from Fat Daddy's Nightclub.

43. Defendants Shawn Landis and Matthew Landis continued to direct the actions of the defendants during this time period.

44. After David A. Potter, Jr. was violently and forcibly evicted from the nightclub, the defendants, including defendants Anthony Hendrickson, John McCoy, Shawn Rohrbaugh, Adam Miller and Matthew Landis, threw David A. Potter, Jr. onto the ground.

45. David A. Potter, Jr. was forced face down outside of the exit of the nightclub, and the defendants remained

on top and around him pinning him to the ground.

46. David A. Potter, Jr. remained helpless, pinned to the ground for many minutes.

47. David A. Potter, Jr. could not breath[e] properly or adequately while defendants continued to lay on top of him and pin him to the ground.

48. By the time that the defendants finally released David A. Potter, Jr., he had stopped breathing.

49. Initially no first aid was given, and it was not until the police and paramedic units arrived that any first aid was administered to David A. Potter, Jr.

\* \* \*

52. David A. Potter, Jr.'s death was a direct and proximate result of the negligence and carelessness of the defendants and defendants' agents as set forth herein.

53. The negligence and carelessness of the defendants and defendants' agents as set forth herein increased the risk of harm to plaintiffs' decedent David A. Potter, Jr.

54. The negligence and carelessness of the defendants and defendants' agents consisted of, but is not limited to the following:

a. Improperly restraining David A. Potter, Jr.;

b. Improperly restraining David A. Potter, Jr. causing him to stop breathing;

c. Improperly restraining David A. Potter, Jr. causing his death;

d. Failing to obtain proper training concerning eviction of patrons;

e. Failing to properly and adequately train its staff concerning the eviction of patrons;

f. Failing to properly and adequately supervise its staff in the eviction[] of patrons;

g. Failing to recognize that David A. Potter, Jr. posed no threat;

h. Creating a hazardous and dangerous condition in and outside of the nightclub;

i. Failing to protect the nightclub's invitees such as plaintiff and plaintiffs' decedent;

j. Failing to warn the nightclub's invitees such as plaintiff and plaintiffs' decedent of the hazards and dangers created by its failure to properly train and supervise its staff;

k. Failing to timely and appropriately respond to a dangerous condition in and outside the nightclub;

l. Breaching its duty of care to the nightclub's business invitees such as plaintiff and plaintiffs' decedent;

m. Failing to properly and adequately staff the nightclub;

n. Failing to properly and adequately staff the nightclub with agents, employees and/or servants who were knowledgeable in the proper method of evicting patrons;

o. Failing to timely render first aid;

p. Negligence *per se;*

q. *Res ipsa loquitur;*

r. Violations of its duties imposed on the Pennsylvania law and the Restatement of Torts, including but not limited to Restatement § 323; and

s. Such other acts of negligence as shall appear during the course of discovery pursuant to the Pennsylvania Rules of Civil Procedure.

(Underlying Complaint at ¶¶ 41–54 (R.R. 44a–47a).)

¶ 12 Although Potter's forceful eviction from the nightclub clearly involved alleg-

edly intentional conduct on the part of some of Appellants, as in *Baumhammers,* Appellants' alleged legal liability for Potter's death derives from the allegations of their negligence. Also as in *Baumhammers,* there are specific factual allegations supporting these claims of negligence, including that Appellants improperly restrained Potter, failed to properly train and supervise their staff about evicting patrons, and failed to timely render first aid. Thus, we conclude that, despite the intentional conduct that was allegedly the most immediate cause of Potter's death, Appellants' alleged negligence, "no less negligent because it is alleged to have led to … intentional attacks," *Baumhammers,* 893 A.2d at 811, can be considered an "accident" triggering an occurrence under QBE's policy.

¶ 13 Next, Appellants assert that the trial court erred in finding that, notwithstanding whether there was an occurrence under the policy, the allegations in the underlying action are excluded under the "assault and battery" exclusion. That exclusion states, in relevant part:

A. ***This insurance does not apply to actions and proceedings to recover damages for "bodily injury", "property damage"* or *"personal and advertising injury" arising from*** the following and the Company is under no duty to defend or to indemnify an insured in any action or proceeding alleging such damages:

1. ***Assault and Battery*** or any act or omission in connection with the prevention or suppression of such acts;

\* \* \*

B. This exclusion applies regardless of the degree of culpability or intent and without regard to:

1. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

2. The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

3. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

(Assault and Battery Exclusion Endorsement (Exhibit C to Complaint for Declaratory Judgment) (R.R. 54a) (emphasis added).) [1]

¶ 14 Although Appellees assert that our decision in *Acceptance Ins. Co. v. Seybert,* 757 A.2d 380 (Pa.Super.2000), compels the conclusion that the assault and battery exclusion in this case precludes coverage, we find that, in fact, following the logic of our analysis in *Seybert,* the exclusion does not apply. In *Seybert,* after "a night of drinking" at the appellant's bar, Seybert was violently attacked in the parking lot by some bar patrons. He alleged that the attack was the result of the bar serving his attackers after they were visibly intoxicated, thus "rendering them incapable of safe and prudent conduct, and contributing to the attack." *Id.* at 381. The bar's liability

1. QBE does not assert that subparts 1, 2, or 3, to part B of the exclusion have any relevance to this case.

insurer brought a declaratory judgment action and the trial court granted summary judgment in favor of the insurer based on an assault and battery exclusion similar to that at issue in the instant case. On appeal, we affirmed that that the insurer had no duty to defend, reasoning:

> Seybert's Complaint contains no allegations that Seybert's actual injuries were caused in any way other than by assault and battery by the five men in the Monroe parking lot. There is no suggestion that Seybert's injuries were an accident ... or were negligently caused directly by Belmont employees. Seybert's attack did not occur on Belmont premises. Therefore, no other allegations of negligence against Belmont reasonably could have been made.

*Id.* at 383.

¶ 15 By contrast, in the instant case, as we discussed at length above in our analysis of the occurrence issue, there is a litany of allegations of Appellants' negligence, including against the employees of Fat Daddy's Nightclub, leading directly to Potter's death. Thus, as alleged in the underlying complaint, Potter's "bodily injury" did not "aris[e] from" an assault and battery, but, rather, arose from the alleged negligence of Appellants.

¶ 16 The Court of Appeals for the Third Circuit came to a similar conclusion in *Essex Ins. Co. v. Starlight Mgmt. Co.,* 198 Fed.Appx. 179 (3d Cir.2006) (unpublished opinion), on strikingly similar facts. There, a patron of a strip club was seriously injured when he was forcibly evicted from the club and, in the process, fell down some steps. He brought a negligence action against the club:

> The amended complaint was grounded in negligence, gross negligence and recklessness. It alleged, *inter alia,* that [the club's] employees "mistakenly believed that [Jaworski] was uncooperative

and disorderly" and, operating under that mistaken belief, they "failed to use due care ... in handling and physically ejecting [him]." The complaint also alleged that Jaworski was injured as a result of [the club's] failure to "exercise due care in the selection and investigation of its employees" and its failure to "provide adequate training to its security employees."

*Id.* at 181 (citations omitted).

¶ 17 The patron prevailed in his suit against the club, and the club's insurer sought a declaration that it was not required to indemnify the club, citing, *inter alia,* the assault and battery exclusion in the club's policy, which had language substantially similar to that in the instant case. The trial court ruled in favor of the insurer. On appeal, the court found that the alleged negligence took the claims outside of the exclusion. Distinguishing *Seybert, supra,* in like manner, the court noted that the patron's underlying complaint "clearly includes allegations that could lead a fact finder to conclude that [the patron's] injuries are a result of negligent conduct, and the complaint is carefully tailored to request relief only for [the club's] negligence." *Essex Ins. Co.,* at 184. The court added: "The amended complaint clearly seeks recovery based only upon negligence. Based upon the allegations of the amended complaint, it cannot be determined as a matter of law that Jaworski's injuries "arise out of" assault and/or battery." *Id.* Similarly, in this case, we agree with Appellants that, in light of the allegations of negligence in the underlying complaint which seeks relief only for negligence, the assault and battery exclusion does not apply.

¶ 18 Accordingly, we find that QBE has an obligation to defend Appellants in the underlying action, with its obligation to indemnify Appellants depending on the

facts developed at trial in that action. As a result, we conclude that the trial court erred in granting summary judgment in favor of QBE, and erred in denying Appellants' cross-motion for summary judgment on this basis, and so we reverse and remand for entry of summary judgment in favor of Appellants on their claim for declaratory judgment that QBE has a duty to defend Appellants.[2]

¶ 19 Order **REVERSED.** Case **RE-MANDED** with instructions. Jurisdiction **RELINQUISHED.**

---

**2.** Given our resolution of Appellants' first two issues, we need not reach their third issue.