IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 2011 Session

## LEONARD GAMBLE v. SPUTNIKS, LLC ET AL.

Appeal from the Circuit Court for Sumner County
No. 2008CV31525    C.L. Rogers, Judge

No. M2010-02145-COA-R3-CV - Filed May 25, 2011

The trial court determined that the insuror of a bar was liable under its commercial general
liability policy and liquor liability policy for injuries to a bar patron. We have concluded that
this occurrence is excluded under the assault and battery exclusion of the commercial general
liability policy but is covered by the liquor liability policy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in
Part, Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL,
P.J., M.S., and RICHARD H. DINKINS, J., joined.

Russell Edward Reviere and Jonathan David Stewart, Jackson, Tennessee, for the appellant,
QBE Insurance Corporation.

William Bryan Jakes, III and Mary Martin Schaffner, Nashville, Tennessee, for the appellee,
Leonard Gamble.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Samuel Clark was fatally attacked by David Smotherman on September 20, 2007, at
Sputniks, a bar in Hendersonville, Tennessee. Leonard Gamble intervened in the altercation
and was injured. Mr. Gamble brought this tort action in June 2008 against Sputniks, LLC;
Cristie[1] Phillips, individually and doing business as Sputniks, LLC; and Mr. Smotherman.

---

[1]We note that throughout the record *Cristie* has been spelled *Cristie*, *Christie*, *Cristi*, and one obvious
(continued...)

The case against Mr. Smotherman was eventually nonsuited. As the allegations of the complaint are critical to the issues raised in this case, we will set out the pertinent provisions in full:

7. That the reason for plaintiff's attempt to separate the two patrons was the fact there was inadequate security or no security at all in Sputniks to prevent or break up the fracas.

8. That Cristie Phillips, dba Sputniks, has engaged in a pattern of conduct which encourages inebriation of its patrons, thereby establishing constructive notice of dangerous conditions or potentially dangerous conditions on the premises.

9. That the failure of Cristie Phillips, dba Sputniks, to provide security exacerbates the potential for dangerous conditions resulting from instances of inebriation of its patrons and, therefore, imposes premises liability for such conditions upon the property occupier and/or owners thereof.

10. That the defendant Cristie Phillips, dba Sputniks, breached the duty to take reasonable steps to remedy commonly occurring dangerous conditions such as that which came to exist on September 30, 2007, when the plaintiff attempted to act as a good samaritan and rend aid to the patron being violently assaulted by defendant David Smotherman.

11. That the defendant Cristie Phillips, dba Sputniks, breached the duty upon business owners to take reasonable measures to protect customers from foreseeable criminal attacks.

12. That the defendant Cristie Phillips, dba Sputniks, had actual or constructive notice of such dangerous conditions or the potential for dangerous conditions based upon prior and recurring incidents of the same nature.

13. That as a proximate result of the negligence of the defendants Cristie M. Phillips, dba Sputniks, LLC, for its failure to take reasonable steps to protect its customers from foreseeable dangerous conditions, the plaintiff, Leonard Gamble, suffered painful and permanent personal injuries necessitating

[1](...continued)
typographical error of *Chrsitie*.

medical care for which plaintiff incurred expenses which he avers are reasonable and necessary.

On November 17, 2008, the trial court entered an order granting default judgment on the issue of liability in favor of Leonard Gamble. On February 19, 2010, after a hearing, the trial court entered a judgment against Sputniks, LLC and Ms. Phillips, individually and d/b/a Sputniks, LLC, in the amount of $275,000.

At the time of the occurrence in September 2007, Sputniks, LLC was insured by QBE Insurance Corporation. QBE denied coverage and declined to defend the action against Sputniks, LLC. In July 2010, Mr. Gamble had the clerk serve a writ of non-wage garnishment on QBE to collect the judgment.[2] QBE answered and denied that it owed any money to Mr. Gamble under its policy. After a hearing, the trial court entered a memorandum opinion dated August 24, 2010, holding that "the occurrences which formed the basis for the underlying claims and final judgments are covered by both the Commercial General Liability and Liquor Liability Coverage agreements of the QBE policy." Therefore, QBE was found responsible for satisfaction of the garnishment writ. QBE appeals.

The only issue on appeal is whether the trial court properly determined that coverage exists under the QBE policy.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). The determination of the scope of insurance coverage is an issue of law. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

ANALYSIS

We must determine whether the trial court correctly held, in the garnishment proceedings, that Sputniks's insurance policies with QBE cover the incident for which Sputniks was found liable to Mr. Gamble.

---

[2]Mr. Gamble also filed a separate declaratory judgment action against QBE seeking a declaration that QBE's policy covered the incident in question.

Under Tennessee law, the general rule is that "an insurer, who has the duty to defend, has timely notice and defends or elects not to defend, is bound by the judgment in such a case as to *issues which were or might have been litigated therein*." *Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735, 737 (Tenn. 1978) (emphasis added). This rule assumes that the insured and the insuror have the same interest in opposing the injured party's claim. *Id.* at 738. The policy behind the rule is to avoid the delay and expense of having two trials on the same issues. *Id.*

The underlying judgment of liability against Sputniks is a default judgment. By allowing a default judgment to be entered, a defendant "impliedly confesses all of the material allegations of fact contained in the plaintiff's declaration except the amount of the plaintiff's unliquidated damages." *Burnette v. Sundeen*, 152 S.W.3d 1, 4 (Tenn. Ct. App. 2004) (quoting *Adkisson v Huffman*, 469 S.W.2d 368, 375 (Tenn. 1971)). Under Tenn. R. Civ. P. 54.03, "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." The policy underlying Tenn. R. Civ. P. 54.03 is that, "since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced." *Elec. Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 227 (Tenn. Ct. App. 1999) (quoting *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). Thus, a default judgment may properly extend only to those matters raised by the pleadings. *Id.* at 228.

There are two possible bases for coverage in this case, the commercial general liability policy and the liquor liability policy, two separate types of coverage for which Sputniks paid separate premiums. We will discuss these two policies separately below.

In interpreting insurance contracts, we apply the same rules of construction that govern the interpretation of other contracts. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). We are to give the language used in an insurance contract its usual and ordinary meaning and construe the policy "as a whole in a reasonable and logical manner." *Id.* at 306 (quoting *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)). Any ambiguity is to be construed against the party who drafted the contract, the insurance company. *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Tenn. 1973).

*Commercial general liability policy*

The trial court concluded that the occurrences that form the basis of the underlying tort claim against Sputniks were covered by QBE's commercial general liability policy and were not excluded by the assault and battery exclusion.

The issue here is the application of the assault and battery exclusion, which states as follows:

This insurance does not apply to:

Assault and Battery

"Bodily injury," "property damage" or "personal and advertising injury" arising from the following:

(1) assault and battery *or any act or omission in connection with the prevention or suppression of such acts*; or

(2) harmful or offensive contact between or among two or more persons; or

(3) apprehension of harmful or offensive contact between or among two or more persons; or

(4) threats by words or deeds.

This exclusion applies regardless of the degree of culpability or intent and without regard to:

(1) whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

(2) *the alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured*;

(3) *the alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.*

(Emphasis added).

The trial court reasoned that the complaint alleged concurrent acts of negligence that were not covered by the assault and battery exclusion. We cannot agree.

Tennessee courts have adopted the concurrent cause doctrine, which provides for coverage where a "nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991). In *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484 (Tenn. Ct. App. 1999), two nightclub patrons got into an argument, and after they moved to a nearby parking lot, one man was knocked unconscious. *Id.* at 485. Employees of the nightclub brought the unconscious man back into the nightclub and placed him on a couch in an office; when someone checked on the man later, he had died. *Id.* The nightclub's general liability insurance policy contained an assault and battery exclusion excluding coverage for "Assault and Battery or any act or omission in connection with the prevention or suppression of such acts." *Id.* at 488. The assault and battery exclusion also contained provisions for its applicability "regardless of the degree of culpability or intent" identical to those in the QBE policy. *Id.* at 488-89. Applying the concurrent cause doctrine, the court affirmed the trial court's grant of summary judgment in favor of the nightclub/insured. *Id.* at 492-93. Because there was a nonexcluded concurrent cause for the plaintiff's injuries---i.e., the nightclub's failure to provide medical assistance---the assault and battery exclusion did not preclude coverage.

The concurrent cause doctrine does not, however, apply in this case as there is no nonexcluded concurrent cause for Mr. Gamble's injuries. The QBE assault and battery exclusion expressly excludes "assault and battery *or any act or omission in connection with the prevention or suppression of such acts*." The complaint in this case does not allege any acts or omissions that fall outside this exclusion. We find unconvincing the plaintiff's attempt to distinguish between negligence in *preventing* a dangerous condition and negligence in *creating* a dangerous condition that encourages inebriation. The broad language of the assault and battery exclusion covers all of the acts and omissions alleged in the complaint, including negligence in creating the conditions that allegedly led to the assault and battery.

We consider the case of *St. Paul Reinsurance Co., Ltd. v. Williams*, No. W2003-00473-COA-R3-CV, 2004 WL 1908808 (Tenn. Ct. App. Aug. 25, 2004), to be instructive here. In that case, a patron at a nightclub died after being shot by another patron. *Id.* at *1. The nightclub's insurance policy included an assault and battery provision excluding coverage for:

> 1. Assault and Battery, whether caused by or at the instructions of, or at the direction of or negligence of the insured, his employees, patrons or any causes whatsoever and

2. Allegations of negligent act or omission by or on behalf of the Insured in connection with hiring, retention or control of employees, supervision or prevention or suppression of such assault and battery.

*Id.* On appeal, the insured argued that the trial court erred in granting summary judgment in favor of the insuror, asserting that "a 'concurrent cause,' the negligence of [the nightclub's] employees in maintaining a secure environment, contributed to the Decedent's death." *Id.* at \*2. This court distinguished the *Watts* and *Planet Rock* cases:

Unlike *Watts* and *Planet Rock*, this case involves a claim which is excluded by the insurance policy. . . . In *Planet Rock*, the nonexcluded cause was the insured's failure to render or make available the appropriate medical care. *Planet Rock*, 6 S.W.3d at 489, 493. However, in this case, the claim alleged by Appellant against [the nightclub] is excluded by the language of the assault and battery exclusion in the insurance policy. . . . In this case, the Appellant's claim falls within the exclusions articulated in the insurance policy, and, therefore, the "concurrent causation doctrine" should not apply to Appellant's claim.

*Id.* at \*4.

We consider the reasoning of *St. Paul Reinsurance* to be applicable in this case.[3] All of Mr. Gamble's claims fall squarely within the assault and battery exclusion and, as a result, the concurrent cause doctrine does not apply.

_____

[3]The plaintiff also relies on *QBE Insurance Corp. v. M & S Landis Corp.*, 915 A.2d 1222 (Pa. 2007), a case in which the court held that the assault and battery exclusion did not apply and that the nightclub's insuror had a duty to defend against a claim involving allegations of negligence in forcibly evicting a patron from the club and throwing him face down onto the ground, where he smothered to death. *Id.* at 1224. Although the insurance policy's assault and battery exclusion covered "Assault and Battery or any act or omission in connection with the prevention or suppression of such acts," the court emphasized that the complaint included allegations of negligence, which it deemed not to be covered by the exclusion. *Id.* at 1228-30. We decline to follow *Landis* and note that later decisions have questioned the result reached by the court. *See Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1163-64 (Pa. 2009) (noting that, in *Landis*, the insurance company did not assert the provisions of the assault and battery exclusion disclaiming liability for negligence in "the hiring, supervision, retention or control" of employees and, therefore, the court "did not base our interpretation of the scope of the assault and battery exclusion on the entirety of the language in the exclusion."); *Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, No. 08-1052, 2009 WL 1220557, at \*7 n.13 (E.D. Pa. Mar. 31, 2009) ("We are unable to reconcile the *QBE* [*v. Landis*] court's conclusion with the plain language of the exclusion and the complaint allegations at issue before it except to note that the court does not appear to have concluded that the factual allegations regarding the underlying intentional conduct of the insured's employees in fact constituted an assault or battery.")

*Liquor liability policy*

We must now consider whether the plaintiff's claims are covered by the liquor liability part of Sputniks's policy with QBE. The pertinent provisions state as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured *by reason of the selling, serving or furnishing of any alcoholic beverage*. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply.

(Emphasis added).

QBE argues that the liquor liability provisions do not cover the claims raised by the plaintiff because there is no allegation that Sputniks served alcohol to Mr. Smotherman and that his intoxication led to the assault and battery. The policy provision requires only that liability be imposed "by reason of the selling, serving or furnishing of any alcoholic beverage." Was liability imposed on Sputniks "by reason of the selling, serving or furnishing of any alcoholic beverage"? Given the fact that the case was decided by default judgment, we must make this determination based upon the allegations of the complaint. As already stated, a default judgment may properly extend only to those matters raised by the pleadings. *Elec. Controls,* 19 S.W.3d at 228. The pleadings required under the Tennessee Rules of Civil Procedure give the parties notice of the claims involved in the case. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001). In construing pleadings, we are to give the language used its "fair and natural construction" and "give effect to the substance of a pleading rather than its form." *Id.*

We consider the following provisions of the complaint to be pertinent here:

> 8. That Cristie Phillips, dba Sputniks, has engaged in a pattern of conduct which *encourages inebriation of its patrons*, thereby establishing constructive notice of *dangerous conditions* or potentially dangerous conditions on the premises.
>
> 9. That the failure of Cristie Phillips, dba Sputniks, to provide security exacerbates the potential for *dangerous conditions resulting from instances of*

*inebriation of its patrons* and, therefore, imposes premises liability for such conditions upon the property occupier and/or owners thereof.

. . .

13.  That as a *proximate result* of the negligence of the defendants Cristie M. Phillips, dba Sputniks, LLC, for its *failure to take reasonable steps to protect its customers from foreseeable dangerous conditions*, the plaintiff, Leonard Gamble, suffered painful and permanent personal injuries necessitating medical care for which plaintiff incurred expenses which he avers are reasonable and necessary.

(Emphasis added).  Reading these allegations together, we understand the plaintiff to assert that Sputniks's failure to protect its customers from foreseeable dangerous conditions resulting from the inebriation of its patrons was a proximate cause of his injuries.  While the complaint is not an example of artful drafting, we consider these allegations sufficient to give notice to QBE that the plaintiff was claiming that he sustained injuries as a result of the "selling, serving or furnishing of any alcoholic beverage."

We further reject QBE's argument that the liquor liability policy extends only to instances included within the Dram Shop Act, Tenn. Code Ann. §§ 57-10-101–57-10-102. The policy language contains no reference to the Dram Shop Act.  *See Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150, 1159 (9ᵗʰ Cir. 2001).  Moreover, by failing to defend the lawsuit, QBE is bound by the trial court's finding of liability against Sputniks.  *See Kelly*, 574 S.W.2d at 737.

## CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part.  Costs of appeal are assessed against QBE, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE