REGIS INSURANCE COMPANY,
Appellant

v.

ALL AMERICAN RATHSKELLER, INC.; Jason, Ryan, Chris, Curtis Rosengrant; Colin Haughton, Grace Jiminez, Admistratrix of the Estate of Salvadore Peter Serrano, and Brooke E. Morgan, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 27, 2008.
Filed May 28, 2009.

Miles A. Kirshner, Pittsburgh, for appellant.

Robert C. Rayman, State College, for All American, Rosengrant and Haughton, appellees.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and POPOVICH, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Appellant Regis Insurance Company ("Regis") filed this declaratory judgment action to resolve a dispute over the extent of its coverage obligations to Appellee All–American Rathskeller[1] ("Rathskeller") under a Special Multi–Peril Policy. The trial court granted summary judgment to Rathskeller. In this appeal, Regis contends that the trial court erred in doing so and should instead have granted summary judgment in its favor or allow the declaratory judgment action to proceed to trial. After careful review, we reverse the entry of summary judgment in favor of Rathskeller and remand with instructions to enter summary judgment in favor of Regis.

¶ 2 Rathskeller owns a tavern (the "Rathskeller") located in State College, Pennsylvania. On October 23, 2003, Salvadore Peter Serrano ("Serrano"), Brooke E. Morgan ("Morgan"), Timothy Padalino ("Padalino"), and Alison Bresnehan ("Bres-

---

1. The remaining persons who are designated as Appellees, *i.e.*, Jason Rosengrant, Ryan Rosengrant, Curtis Rosengrant, Colin Haughton, Grace Jiminez ("Jiminez"), Administratrix of the Estate of Salvadore Peter Serrano, and Brooke E. Morgan, are not parties to this appeal.

nehan") were walking on the street immediately adjacent to the Rathskeller's parking lot. Padalino stopped to urinate in the parking lot and was soon confronted by employees of the Rathskeller. An altercation ensued between the group of Serrano, Morgan, Padalino and Bresnehan and Rathskeller's employees. During the incident, Rathskeller's employees restrained Serrano by kneeling on his back until the police could arrive on the scene. When the police arrived, Serrano was dead.

¶ 3 Jiminez and Morgan filed suit in the United States District Court for the Middle District of Pennsylvania against Rathskeller and its employees; the owner of the parking lot adjacent to Rathskellers; another tavern and its employees; and the Borough of State College Police Department ("Underlying Lawsuit"). The complaint in the Underlying Lawsuit alleged alternative theories of liability against the various defendants including negligence. Two counts in the complaint against Rathskeller sounded solely in negligence.[2]

¶ 4 At the time of the incident, Rathskeller was insured by Regis under a Special Multi–Peril Policy, which contained an exclusion from coverage for acts of assault and battery (form "RAB–3").[3] When the

2. See First Amended Complaint for Declaratory Judgment, Ex. A—Count IV (Negligence, Negligent Supervision/Training/Hiring Claim; *Plaintiffs v. Rathskeller; Count IX—Negligence and Vicarious Liability).*

3. The assault and battery exclusion contained on form RAB–3 states in pertinent part:

THE ASSAULT AND BATTERY EXCLUSION AND COVERAGE ENDORSEMENT

I. In consideration of the premium charged for this insurance, it is understood and agreed that the policy to which this endorsement is attached is amended and modified as follows:

Actions and proceedings to recover damages for "bodily injury" or "property damage" or "personal injury" arising in whole or in part, from any of the following are excluded from coverage and [Regis] is under no duty to investigate, defend or to indemnify an insured in any action or proceeding alleging such causes of action and damages:

1. Assault and battery or any act or omission in connection with the prevention, suppression, or results of such acts;

2. Harmful or offensive contact between or among two or more persons;

3. Apprehension of harmful or offensive contact between or among two or more persons;

4. This exclusion applies to "bodily injury," "property damage," "personal injury," or any obligation to investigate, defend or indemnify, if such injury, damage or obligation is caused directly or indirectly by any other cause or event that contributes concurrently or in any other sequence to the injury or damage. If injury or damage from a covered occurrence, cause or event occurs, and that injury or damage would not have occurred but for the acts or omissions set forth in paragraphs 1 through 4 above, such injury or damages will be considered to be caused by the acts or omission set forth in paragraphs 1 through 4 above, and would be excluded from coverage.

This exclusion applies regardless of the degree of culpability or intent and without regard to:

A. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

B. The alleged failure of the insured or his officers, employees, agents or servants in the hiring supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

C. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct or to medically treat or obtain such treatment for injuries or damages sustained.

This exclusion applies as well to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim

Underlying Lawsuit was filed against its insured, Regis recognized its interim duty to defend and hired independent defense counsel for Rathskeller in the Underlying Lawsuit, subject to a reservation of rights letter. Regis then filed this declaratory judgment action, in which it contends that it has no duty to defend[4] or indemnify Rathskeller because the conduct at issue falls within the assault and battery exclusion of the insurance policy.

¶ 5 After the close of pleadings, Regis filed motions for judgment on the pleadings and for summary judgment. In its written opinion and order dated March 15, 2006, the trial court found that: "Clearly the language of the Exclusion excludes coverage for the very allegations averred in the underlying Complaint. Therefore, Plaintiff would not be required to indemnify or defend Defendant Rathskeller in the federal suit." Trial Court Opinion, 3/15/06, ("Original Opinion") at 10. The trial court nevertheless denied the motions because material issues of fact remained with regard to whether Rathskeller was aware of the assault and battery exclusion in its policy. After obtaining evidence to prove that Rathskeller was aware of the exclusion in its policy, Regis filed a renewed motion for summary judgment. The trial court also denied this renewed motion, however, finding that the available evidence still did not resolve the issue of whether the assault and battery exclusion constituted a change in Rathskeller's cov-

erage and, if so, whether the insurance agent who sold the policy adequately explained the change to Rathskeller.

¶ 6 Rathskeller subsequently filed its own motion for summary judgment, which the trial court granted based upon its interpretation of this Court's decision in *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222 (Pa.Super.2007), *appeal denied*, 598 Pa. 769, 956 A.2d 436 (Pa.2008). The trial court focused on the following language from the *QBE* opinion:

> [T]he *QBE* Court explained that "in light of the allegations of negligence in the underlying complaint which seeks relief only for negligence, the assault and battery exclusion does not apply." 915 A.2d [at] 1229. As a result, the Court stated as follows: "We find that *QBE* has an obligation to defend [Fat Daddy's] in the underlying action, with its obligation to indemnify [Fat Daddy's] depending on the facts developed at the trial in that action." *Id.* at 1229–30.

Trial Court Opinion, 4/9/07, at 4.

¶ 7 Relying on these excerpts from *QBE*, the trial court found that Regis has a duty to indemnify Rathskeller since (1) the pleadings in the underlying civil action sound in negligence, and (2) because the underlying civil action has settled,[5] "no facts will ever be developed" at a trial that might support Regis' contention that the facts giving rise to the underlying civil action fall within the ambit of an "assault

---

excluded under Clauses A, B or C (above); specifically excluding from coverage claims for:
1. Emotional distress or for loss of society, services, consortium and/or income;
2. Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization;
3. Any obligation to share damages with or repay someone who must pay damages because of the injury.

**4.** Regis has abandoned its request for a declaration that is had no duty to defend Rathskeller because it provided a defense to Rathskeller to the conclusion, by settlement, of the Underlying Lawsuit. Appellant's brief at 10, fn. 1. Neither the Settlement Agreement nor the terms of the settlement of the Underlying Lawsuit are part of the record in this appeal.

**5.** Rathskeller settled the Underlying Lawsuit prior to the trial court's Original Opinion denying Regis' motions for judgment on the pleadings and for summary judgment.

and battery exclusion" in the Rathskeller policy. Trial Court Opinion, 4/9/07, at 4.

¶ 8 On appeal, Regis maintains that the trial court erred in granting summary judgment in favor of Rathskeller. Regis argues that the trial court misapplied *QBE* in this case because *QBE* addresses only an insurer's duty to defend and not an insurer's duty to indemnify.[6] We agree with Regis that the trial court's reliance upon *QBE* in granting summary judgment to Rathskeller on the issue of Regis' duty to indemnify was error. In *QBE*, we found that the insurer had a duty to defend because the pleadings in the underlying action sounded solely in negligence rather than in intentional conduct amounting to assault and battery. *QBE*, 915 A.2d at 1229. The issue in *QBE* was the insurer's duty to *defend*. The dispositive issue in this case, in significant contrast, is Regis' duty to *indemnify* Rathskeller for the amount of a settlement in the underlying civil action. As this Court has repeatedly acknowledged, the duties to defend and indemnify are separate and distinct: "Unlike the duty to defend, the duty to indemnify cannot be determined merely on the basis of whether the factual allegations of the complaint potentially state a claim against the insured." *American States*

*Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 63 (Pa.Super.1998); *see also Britamco Underwriters, Inc. v. Stokes*, 881 F.Supp. 196, 198 (E.D.Pa.1995) ("The duty to defend arises whenever claims asserted by the injured party potentially come within the coverage of the policy, while the duty to indemnify arises only when the insured is determined to be liable for damages within the coverage of the policy.").

¶ 9 The trial court's interpretation of the previously quoted *dicta* in *QBE* would result in a blanket rule holding that where there is no trial in the underlying civil action because of a settlement, the insurer's declaratory judgment rights are terminated and there is an automatic duty to indemnify—even if the facts would clearly provide to the contrary in a trial in the declaratory judgment action. No such blanket rule exists in Pennsylvania. In fact, such a rule is contrary to the purpose of filing a declaratory judgment action to determine coverage issues.[7] Regis' declaratory judgment action was filed for the purpose of determining, *inter alia*, whether Regis has an indemnity obligation to Rathskeller. As a matter of law and to the extent necessary, Regis was entitled to an opportunity to introduce evidence proving the applicability of the subject exclusion.[8]

---

**6.** Regis also argues that *QBE* was wrongly decided and that it should be overruled. This panel has no authority to overrule *QBE*. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa.Super.2006) ("It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court.") (citing *Commonwealth v. Hull*, 705 A.2d 911, 912 (Pa.Super.1998)). Moreover, as noted in our initial citation to *QBE*, our Supreme Court denied an appeal of the decision.

**7.** It is common practice for insureds and insurance companies to file declaratory judgment actions when there is a dispute regarding whether the insurer has a duty to defend and/or indemnify a policyholder making a claim under the policy. *E.g., General Acc. Ins. Co. of America v. Allen* 547 Pa. 693, 705,

692 A.2d 1089, 1095 (1997). In fact, this Court has noted that declaratory judgment actions are "particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obligated to defend and/or indemnify one claiming under the policy." *Pressley v. Travelers Property Cas. Corp.*, 817 A.2d 1131, 1138 (Pa.Super.2003); *see also Liberty Mutual Insurance Co. v. S.G.S. Co.*, 456 Pa. 94, 95–99, 318 A.2d 906, 907–908 (1974); *Warner v. Continental/CNA Ins. Companies*, 455 Pa.Super. 295, 688 A.2d 177, 180 (1996), *appeal denied*, 548 Pa. 660, 698 A.2d 68 (1997).

**8.** Our prior decision in *American States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56 (Pa.Super.1998), is instructive in this regard. In *American States*, this Court refused to adopt a

¶ 10 To the extent that genuine issues of material facts remained unresolved, the fact that the Underlying Lawsuit settled did not, as the trial court found, make it "impossible for Regis to prove now, or in the future, that its assault and battery policy exclusion applies to deny [Rathskeller] coverage in this case." Trial Court Opinion, 4/9/07, at 16. Although the settlement would prevent development of the facts in a trial of the Underlying Lawsuit, the facts pertinent to the duty to indemnify could be determined at a trial in the declaratory judgment action. When an action under the Declaratory Judgment Act involves the determination of an issue of fact, that issue may be tried and determined in the same manner that issues of fact are determined in other civil proceedings in the court in which the action is pending. 42 Pa.C.S.A. § 7539. Regis argues, however, that a trial on the declaratory judgment action is not warranted in this case because it is entitled to summary judgment. We agree.

¶ 11 Prior to granting summary judgment in favor of Rathskeller, the trial court twice denied motions for summary judgment filed by Regis. On appeal, Regis now contends that the trial court's second denial, of Regis' "Renewed Motion for Summary Judgment",[9] was error because it was entitled to summary judgment based upon the evidence presented to the trial court at that time. In support of this position, Regis argues (1) the allegations in the Underlying Lawsuit all fall within the policy's assault and battery exclusion and, if proven, Regis would have no duty to indemnify Rathskeller for any liability resulting from the claims, and (2) the trial court mistakenly applied the "reasonable expectations" doctrine and thus incorrectly imposed an obligation on Regis to prove that Rathskeller had notice of and understood the assault and battery exclusion. We will address these two issues in turn.

¶ 12 With respect to the first issue, at the close of the pleadings Regis filed its first dispositive motion, entitled a "Motion for Judgment on the Pleadings/Motion for Summary Judgment." Although the trial court denied this motion for other reasons (the "reasonable expectations" doctrine, discussed hereinbelow), it agreed with Regis that the allegations in the Underlying Lawsuit all fell within the scope of the assault and battery exclusion in the Regis policy. In its Original Opinion, the trial court ruled that if the exclusion applied, then Regis had no duty either to defend or indemnify Rathskeller:

> After a comparison of the language in the Exclusion and the allegations averred in the underlying Complaint, the Court concludes the claims averred

blanket rule establishing an insurer's mandatory duty to indemnify whenever there is a settlement of the underlying civil litigation. Instead, in *American States* we affirmed the trial court's decision to allow the insurer to present evidence to prove that the claim was not covered under its policy. *Id.* at 64. In so ruling, we distinguished *Pacific Indemnity Co. v. Linn*, 590 F.Supp. 643 (E.D.Pa.1984), *affirmed*, 766 F.2d 754 (3d Cir.1985), in which the federal district court held that the duty of several competing insurers to indemnify was automatic after a settlement of lawsuits based on multiple theories of liability since the settlement made it impossible to determine which of the multiple insurers had a duty to indemnify.

9. The trial court denied Regis' "Renewed Motion for Summary Judgment" by opinion and order dated September 12, 2006, which order was at that time interlocutory and thus not subject to appeal. Pa.R.A.P. 341. Interlocutory orders not subject to immediate appeal as of right may be reviewed in a subsequent appeal of a final appealable order or judgment. *Bird Hill Farms, Inc. v. United States Cargo & Courier Service, Inc.*, 845 A.2d 900, 903 (Pa.Super.2004) ("Once an appeal is filed from a final order, all prior interlocutory orders are subject to review.").

are clearly excluded from coverage under the Policy. The Complaint alleges Defendant Rosengrant caused the death of [ ] Serrano by kneeling on [ ] Serrano's chest and/or back. This qualifies as "harmful or offensive contact between two or more persons." The Complaint alleges Defendant Morgan "was restrained by employees of the Rathskeller in such a manner that she was compelled to witness the horrible death of Serrano, her fiancé, and was otherwise unable to come to Serrano's aid." Such allegation also meets the criteria for "harmful or offensive contact" under the Exclusion.

It is alleged that "Ms. Morgan suffered severe personal injuries and damages as a result of the confrontation and restraint while in the zone of danger where Serrano was negligently and recklessly killed, all proximately caused by the collective action and conduct of the Defendants." However, the Exclusion excludes claims for "emotional distress, or for loss of society, services, consortium and/or income."

Further, the Complaint alleges Defendant Rathskeller "negligently failed to properly train its employees on how to recognize and interact appropriately with individuals who are visibly intoxicated and/or dealing with individuals who are improperly restraining individuals in the common areas outside its premises. The Rathskeller further failed to train its staff on the manner of safely restraining an individual that the Rathskeller intended to restrain for any purpose." However, again, the Exclusion provides that it applies "regardless of the degree of culpability or intent and without regard to . . . the alleged failure of the insured or its officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured."

Clearly the language of the Exclusion excludes coverage for the very allegations averred in the underlying Complaint. Therefore, [Regis] would not be required to indemnify or defend Defendant Rathskeller in the federal suit. Original Opinion, at 9–10.

¶ 13 In this appeal, Regis asks us to adopt this decision of the trial court because "this essential holding has never been challenged, changed or amended in any way." Appellant's Brief at 22. The holding clearly has been "challenged, changed or amended," however, since in subsequently granting summary judgment to Rathskeller, the trial court reversed itself with respect to the scope of Regis' coverage obligations under the assault and battery exclusion. Based upon its understanding of *QBE*, the trial court decided that "the only issue is whether or not an assault and battery exclusion bars coverage for a negligence-based action. This Court concludes that it does not." Trial Court Opinion, 4/9/07, at 4.

¶ 14 Again, we find that the trial court's reliance on *QBE* was misplaced. Our decision in *QBE* has no application in interpreting the scope of coverage under the assault and battery exclusion in this case for two reasons. First, the assault and battery exclusion in *QBE* did not broadly exclude from coverage any "harmful or offensive contact between or among two or more persons," as does the exclusion at issue here (see footnote 3 *supra*). Instead, the exclusion in *QBE* excluded from coverage only "*Assault and Battery* or any act or omission in connection with the prevention or suppression of such acts."[10] *QBE*,

---

**10.** This same language is also contained in the Regis policy exclusion at issue in this case. *See* footnote 3 *supra*.

915 A.2d at 1228. *Id.* In this case, although negligence claims were asserted against Rathskeller's employees in the Underlying Lawsuit, these claims, as the trial court found in its Original Opinion, nevertheless involve "harmful or offensive contact between or among two or more persons," and are therefore excluded from coverage.

¶ 15 Second, in *QBE* the insurance company (QBE) did not assert as a defense the provisions in the assault and battery exclusion disclaiming liability for negligence in "the hiring, supervision, retention or control" of its employees or other representatives. To the contrary, we made clear in a footnote in *QBE* that "QBE does not assert that subparts 1, 2, or 3 to part B of the exclusion have any relevance to this case." *QBE*, 915 A.2d at 1228, n. 1. These provisions ("Subparts 1, 2 and 3 to part B") are identical to Clauses A, B and C in the exclusion in the Regis policy at issue in this case (see footnote # 2 *supra*). Thus, in *QBE* we did not base our interpretation of the scope of the assault and battery exclusion on the entirety of the language in the exclusion.

¶ 16 In contrast, in this case Regis clearly has asserted the applicability of Clauses A, B and C in the assault and battery exclusion as limits on the scope of its coverage obligations. And the trial court, in its Original Opinion, expressly relied upon Clause B in reaching its decision that the language in the exclusion excluded coverage for the negligence-based allegations in the Underlying Lawsuit, quoting it in full: "However, again, the Exclusion provides that it applies "regardless of the degree of culpability or intent and without regard to ... the alleged failure of the insured or its officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or serv-

ant of the insured." Original Opinion, at 10.

¶ 17 We conclude that the trial court's Original Opinion was correct. The federal complaint alleged that Rathskeller's employees caused the death of Serrano "by kneeling on his chest and/or back and restraining him ...," and also "forcefully restrained" Morgan in the zone of danger, causing her to witness Serrano's death. First Amended Complaint for Declaratory Judgment, Ex. A at ¶¶ 30–32, 102–03. The trial court fairly determined that these allegations constituted "harmful or offensive contact between or among two or more persons" excluded from coverage under the policy in this case.

¶ 18 The federal complaint further sets forth a series of allegations of negligence against Rathskeller, including failures (1) to train employees on how to deal with intoxicated people and/or how to restrain them when necessary, (2) to supervise its employees to assure they did not negligently injure patrons or other individuals (including intoxicated persons), and (3) to have policies regarding the policing of common areas outside the premises and the activities of its employees in those areas. *Id.* at ¶¶ 69–76. The language of the assault and battery exclusion, however, including in particular its Clauses A, B, and C, specifically excludes coverage arising from the insured's alleged failures in the hiring, supervision, retention or control of any person, or the insured's alleged failures to attempt to prevent, bar or halt any harmful or offensive conduct.

¶ 19 Other than to commend the trial court's interpretation of *QBE*, Rathskeller has offered no argument that the language of the assault and battery exclusion at issue here is unclear or ambiguous in any way. Rathskeller likewise has not referred us to any specific allegation in the Underlying Lawsuit that does not fall

within the ambit of the assault and battery exclusion (including its Clauses A, B, and C) nor has Rathskeller otherwise challenged the breadth and scope of this assault and battery exclusion. As a result, we are constrained to agree with Regis that it is entitled to summary judgment as a matter of law on this issue.

¶ 20 Accordingly, we move on to consider the trial court's reasons for denying Regis' "Renewed Motion for Summary Judgment"—namely its finding that issues of fact remained with regard to whether Rathskeller reasonably expected coverage for assault and battery, or, conversely, whether the insurance agent who sold the policy provided reasonable notice to Rathskeller of the inclusion of the assault and battery exclusion in the Regis policy. Trial Court Opinion, 9/12/06, at 4–6. In applying the "doctrine of reasonable expectations," the trial court found that "courts have held that an insurer has an affirmative duty to notify the insured of unilateral changes made to a policy." *Id.* at 4–5 (citing *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987)). The trial court further noted that "if the insurer is acting through an agent, it is bound by the agent's representations and omissions concerning coverage." *Id.* at 5 (citing *Sands v. Granite Mut. Ins. Co.*, 232 Pa.Super. 70, 331 A.2d 711 (1974)).

¶ 21 In *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), this Court held that exclusions in insurance policies could be enforced only if the insurer proved that the insured was aware of the exclusion and that its effect had been adequately explained to him. *Id.* at 365. *Hionis* was expressly overruled in *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983), in which our Supreme Court indicated that "[b]y focusing on what was and was not said at the time of contract formation rather than on the parties' writing,

*Hionis* makes the question of the scope of insurance coverage in any given case depend upon how a factfinder resolves questions of credibility." *Id.* at 306, 469 A.2d at 567. Accordingly, in *Standard Venetian Blind* the Supreme Court held that where "the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Id.* at 307, 469 A.2d at 567.

¶ 22 Four years after its decision in *Standard Venetian Blind,* the Supreme Court decided *Tonkovic.* In *Tonkovic,* the plaintiff requested a specific type of coverage, namely a disability policy that would enable him to make his mortgage payment in the event of injury without regard to where the injury occurred or whether he might be eligible for workers' compensation benefits for a work-related injury. *Tonkovic,* 513 Pa. at 447, 521 A.2d at 921. After accepting the plaintiff's application and premium payment, however, prior to delivery the defendant insurance company, without explanation to plaintiff, inserted an exclusion in the policy that specifically excluded the payment of any benefits if the plaintiff was injured at his workplace and was eligible for workers' compensation benefits. *Id.*

¶ 23 The Supreme Court ruled that the exclusion was unenforceable because it violated the insured's "reasonable expectations" since he was "never made aware of the substantial discrepancy between the coverage for which he applied and that which the policy actually provided." *Id.* at 455, 521 A.2d at 925. Distinguishing *Standard Venetian Blind,* the Court found "a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different

from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Id.* at 454, 521 A.2d at 925. As a result, the Court held as follows:

> We hold that where, as here, an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy.

*Id.* at 455, 521 A.2d at 925.

¶ 24 In the case *sub judice*, the trial court ruled that material issues of fact remained regarding Rathskeller's reasonable expectations of coverage for incidents involving assault and battery.[11] In particular, the trial court relied upon the testimony of Gerard Gastiger ("Gastiger"), Rathskeller's president, who testified that none of Rathskeller's prior policies, including a policy issued by Regis, contained an assault and battery exclusion. Trial Court Opinion at 6. Gastiger further testified that William Jones ("Jones"), the agent who obtained the policy for Rathskeller, in-

formed him that the policy was the "same as always." *Id.* Based upon Gastiger's testimony, the trial court found that *Tonkovic's* prohibition against unilateral changes in coverage applied in this case, leaving issues of fact for resolution regarding whether the assault and battery exclusion in the Regis policy constituted an unauthorized change in coverage, and whether Jones, acting as an agent for Regis, failed to explain the exclusion to Rathskeller. *Id.*

¶ 25 Reviewing Gastiger's testimony in its entirety, however, it is clear that the Supreme Court's decision in *Standard Venetian Blind* controls in this case rather than *Tonkovic*. First, this was not a renewal of a prior Regis policy. Gastiger testified that in the years immediately prior to his purchase of the Regis policy at issue in this case, Rathskeller had been insured by another company, Tuscarora Wayne Insurance Company, and that the switch to Regis was necessitated because Tuscarora stopped offering such policies. Renewed Motion for Summary Judgment, Ex. B at 15, 22. Second, Gastiger agreed that every document issued by Regis in connection with the policy expressly identified the assault and battery exclusion as

---

**11.** In cases decided subsequent to *Standard Venetian Blind* and *Tonkovic*, Pennsylvania courts deciding issues of insurance coverage have focused on the reasonable expectations of the insured. *See, e.g., Gilderman v. State Farm Ins. Co.*, 437 Pa.Super. 217, 649 A.2d 941, 944 (1994), *appeal denied*, 541 Pa. 626, 661 A.2d 874 (1995). However, "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Universal Teleservices Arizona, LLC v. Zurich American Ins. Co.*, 879 A.2d 230, 234 (Pa.Super.2005); *St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28, 30 (1993); *Neil v. Allstate Ins. Co.*, 379 Pa.Super. 299, 549 A.2d 1304, 1309–10 (1988), *appeal denied*, 522 Pa. 578, 559 A.2d 39 (1989); *see also Bateman v. Motorists Mut. Ins. Co.*, 527 Pa. 241, 245, 590 A.2d 281, 283 (1991) ("If

the policy language is clear and unambiguous, we give effect to the language of the contract."). Courts must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured," *Dibble v. Security of Am. Life Ins. Co.*, 404 Pa.Super. 205, 590 A.2d 352, 354 (1991), with an emphasis on the express terms of the written insurance policy. *J.H. France Refractories Co. v. Allstate Ins. Co.*, 396 Pa.Super. 185, 578 A.2d 468, 472 (1990) (holding that "any interpretation advanced contrary to the contents of the written document could hardly be viewed as "reasonable" to assert; unless good reason in law is advanced for the disregarding of the clearly contrary phraseology"), *reversed in part on other grounds*, 534 Pa. 29, 626 A.2d 502 (1993).

part of the policy. Gastiger testified that he discussed both the initial application for insurance and Regis' subsequent pre-insurance quote with Jones, and that both of these documents expressly reference the assault and battery exclusion: the application contains a "RAB–3" limitation on coverage and the quote identifies "RAB–3" as the "Assault and Battery Exclusion". *Id.* at 19–21. The confirmation of coverage sent by Regis also lists "RAB–3 Assault and Battery Exclusion" on it, and "RAB–3" is noted on the policy's declarations page. *Id.* at Ex. C–D to Ex. C. Finally, Gastiger admitted that the policy issued by Regis and delivered to Rathskeller in fact contained the assault and battery exclusion, but that prior to the Serrano incident he had not read the policy or its exclusions.[12] *Id.* at 35–36.

¶ 26 As a result, unlike in *Tonkovic* where the insured applied for and prepaid for one type of coverage but then received something else, in this case Gastiger's testimony (binding on Rathskeller) demonstrated that there was no unilateral change in the scope of coverage from the time of application to the time of policy delivery. To the contrary, Gastiger agreed that the pre-insurance quote expressly identified an "Assault and Battery Exclusion" and the policy as delivered contained precisely this exclusion. As a result, Rathskeller received precisely the policy quoted by Regis, and Rathskeller has not identified any

document it received from Regis that in any way misrepresented the nature of the coverage it was offering. Pursuant to *Standard Venetian Blind,* Gastiger's failure to read the relevant documents, including most importantly the policy and its exclusions (prior to the Serrano incident), does not preclude enforcement of the assault and battery exclusion.

¶ 27 Jones' alleged representations to Gastiger that the Regis policy was the "same as always" does not compel a different result here. Because we conclude as a matter of law that Jones was not Regis' agent in connection with this transaction, Jones' alleged misrepresentations regarding the policy and its exclusions are not binding upon Regis.

¶ 28 The general rule regarding insurance broker/agency issues is found in *Taylor v. Crowe,* 444 Pa. 471, 282 A.2d 682 (1971). In *Taylor,* the insurance broker had been advising the insureds regarding their insurance needs for many years. The insureds wanted insurance coverage for a bowling alley they owned, including protection against landslides. *Id.* at 472–73, 282 A.2d at 682. The broker assured the insureds that coverage (including for landslides) could be obtained for a low premium through a policy issued by a group of insurers. *Id.* When a landslide damaged the bowling alley six months later, the insureds found out that the policy

---

**12.** Gastiger testified that Rathskeller had purchased one or more policies from Regis in prior years (i.e., before the Tuscarora Wayne policies), but he could not recall precisely when. *Id.* at 34. Gastiger also testified that he was "not aware of assault and battery exclusions" in those policies. *Id.* This testimony, however, does not create an issue of fact on this point because of the intervening policies with other insurers and as explained hereinabove, the policy application and pre-insurance quote clearly identified the existence of an assault and battery exclusion in the policy to be issued.

We also note that Regis, in support of its Renewed Motion for Summary Judgment, submitted an affidavit from James Moll, a manager of its underwriting department. *Id.* at Ex. C. Mr. Moll testified that he had reviewed the previous Regis policy issued to Rathskeller, and that it did contain an assault and battery exclusion. Because Mr. Moll is a representative of Regis, we agree with the trial court's decision not to consider the contents of the affidavit based upon *Nanty–Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932).

they had purchased did not provide landslide protection. *Id.* at 473, 282 A.2d at 682. The insureds then sued the insurance companies and the broker based on a theory of negligent misrepresentation regarding the scope of coverage provided. *Id.* at 473, 282 A.2d at 683. Testimony at trial demonstrated that the insureds had not instructed the broker to obtain insurance from a specific insurance company, but rather had advised him to go into the marketplace to obtain "the best insurance you can get." *Id.* at 475, 282 A.2d at 683.

¶ 29 Our Supreme Court ruled that the broker was not acting as an agent for the insurance companies and affirmed the trial court's directed verdict in favor of the insurers:

> Where a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not the insurer.

*Id.* (quoting *Taylor v. Liverpool & L & G Ins. Co.*, 68 Pa.Super. 302, 304 (1917)). The Supreme Court further indicated that a broker may in appropriate cases be considered the agent of the insurer, but there must be some evidence to infer such an agency relationship:

> A broker may be found to have acted on behalf of an insurer in negotiations between the latter and the insured so as to be deemed the agent of the insurer and not the insured ... *but there must be some evidence of an authorization, or some fact from which a fair inference of an authorization by the company might be deduced to make an insurance broker the agent of the company.*

*Id.* at 475, 282 A.2d at 683–84 (quoting Couch on Insurance, 2d, § 25:95) (emphasis added).

¶ 30 In subsequent cases, Pennsylvania courts have typically adhered to the general rule in *Taylor v. Crowe,* concluding that an insurance broker unaffiliated with a particular insurance company is not the agent of the insurer in the absence of evidence to the contrary. *See, e.g., Kairys v. Aetna Casualty and Surety Co.,* 314 Pa.Super. 502, 461 A.2d 269, 276 (1983) ("We find that Tripp was not an agent of Aetna. This finding is based upon the fact that Tripp was not held out as being an 'authorized representative' of Aetna and that the appellant did not request any particular company where his insurance was to be placed."); *see also Transguard Ins. Co. of America, Inc. v. Hinchey,* 464 F.Supp.2d 425, 431 (M.D.Pa.2006); *Comcast v. Chubb & Son, Inc.,* 2006 WL 2302686 at *14 (E.D.Pa., August 8, 2006).

¶ 31 In the cases where the broker was found to be the agent of the insurer, the insured was able to produce specific evidence to support an inference of an agency relationship between the broker and the insurer. In *Sands v. Granite Mut. Ins. Co.,* 232 Pa.Super. 70, 331 A.2d 711 (1974), for example, the policy at issue in the case identified the broker as an "authorized representative" of the insurer. *Id.* at 715. The evidence further demonstrated that the broker and the insurer had a "unique relationship," including the broker's exclusive right to set rates for the insurer and to deduct its commissions directly from the premiums as it received them. *Id.* at 715. Based upon the facts of record, we concluded that the broker "had apparent, if not actual, authority to bind" the insurer. *Id.; see also Joyner v. Harleysville Ins. Co.,* 393 Pa.Super. 386, 574 A.2d 664, 669 (1990) (where broker was identified as the "producer of record" on the application for insurance and allowed to collect premiums, the broker had apparent authority to collect premiums on behalf of insurer), *appeal denied,* 527 Pa. 587, 588 A.2d 510 (1991).

¶ 32 In the present case, Gastiger testified that Jones had served as Rathskeller's insurance broker for approximately 15 years and that they met twice every year to discuss the company's automobile, workmen's compensation, and general liability policies. Renewed Motion for Summary Judgment, Ex. B at 12, 14–15. Gastiger further testified that he understood that Jones went into the insurance marketplace to seek quotes for the best coverage at a low price, and that in fact he wanted Jones to "shop every year" rather than simply renew policies with the same insurer. Id. at 12–13, 15.

¶ 33 Based upon this evidence of record, the general rule in *Taylor v. Crowe* clearly applies in this case. Gastiger's testimony establishes his understanding that Jones was not bound to any particular insurance company, but rather that he routinely searched the insurance marketplace to find the best insurance policy for Rathskeller. There are no facts of record to show that Jones was Regis' "authorized representative" (as in *Sands*) or any "evidence of an authorization, or some fact from which a fair inference of an authorization by [Regis] might be deduced." *Taylor*, 444 Pa. at 475, 282 A.2d at 684.

 ¶ 34 Rathskeller argues that "ordinary experience" leads an insured to believe that the insurance agent is the representative of the company issuing the policy, and that as a result the nature and extent of Jones' apparent authority is a question of fact for the fact-finder.[13] Appellee's Brief at 6. We disagree, since "[a]lthough the question of whether a principal-agent relationship is ordinarily one of fact for the jury, where the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the court." *Joyner*, 574 A.2d at 668. No facts are in dispute in this case that would question the application of the general rule in *Taylor v. Crowe.*

¶ 35 Accordingly, we conclude that Jones was the agent of Rathskeller, and not of Regis, in connection with the purchase of the insurance policy at issue in this case. As such, any statements that Jones may have made to Rathskeller's representatives (e.g., Gastiger) are not binding upon Regis and thus did not create any "reasonable expectations" regarding the scope of coverage under the policy. Rathskeller does not argue that the terms of the assault and battery exclusion are ambiguous in any way, that the exclusion was not contained in the policy as delivered, or that the limitations of coverage set forth therein could not have been readily apprehended by the insured if the policy had been read prior to the Serrano incident.

13. Rathskeller also cites to *Triage, Inc. v. Prime Ins. Syndicate, Inc.*, 887 A.2d 303 (Pa.Super.2005), *appeal denied*, 587 Pa. 699, 897 A.2d 460 (2006), for the proposition that an insurance broker's "mere placement of a policy and collection of a premium may suffice to create an agency relationship with the insurer." Appellee's Brief at 6–7. In the case *sub judice*, however, there is no evidence that Jones collected premiums on Regis' behalf. Even if Jones had collected premiums on Regis' behalf, however, the scope of the authority thereby created would be limited to the task of collecting payments and not to any implied authority to advise Rathskeller generally with regard to the terms of the policy. *See, e.g., Joyner*, 574 A.2d at 669 (holding that "Seers was an agent of Harleysville in Seers' function of collecting premiums from Mr. Joyner"); *Hawthorne v. American Mortg. Inc.*, 489 F.Supp.2d 480, 486 (E.D.Pa.2007) ("[T]he scope of the authority thereby created would be limited to the function of collecting payments ...."); *Rich Maid Kitchens, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 641 F.Supp. 297, 304–05 (E.D.Pa.1986) ("At most, one could argue that [the broker] was the agent for [the insurer] in his function of collecting premiums from [the insured].").

¶ 36 For these reasons, the assault and battery exclusion in the policy issued by Regis is enforceable and bars recovery by Rathskeller. The trial court's denial of Regis' "Renewed Motion for Summary Judgment" was error.

¶ 37 Judgment in favor of Rathskeller reversed. Case remanded with instructions to enter summary judgment in favor of Regis.